**Mary Kyle Joyce RITCHEY, Appellant,**

v.

**Dr. J.T. CRAWFORD, Jr., Appellee.**

**No. 01–86–0164–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 11, 1987.

Thomas M. Stanley, Ernest Cannon & Associates, Houston, for appellant.

David G. Matthiesen, Funderburk & Funderburk, Houston, for appellee.

Before LEVY, EVANS and SAM BASS, JJ.

OPINION

LEVY, Justice.

Appellant, Mary Kyle Joyce Ritchey, appeals from a take-nothing judgment entered in a dental malpractice case. Ritchey complained that appellee, Dr. J.T. Crawford, Jr., negligently performed a root canal operation by injecting Hydron, a filling material, into a root canal that subsequently came out of the tip of the canal and entered the sinus cavity. Ritchey claims that she developed chronic sinusitis because of the Hydron presence in her sinus cavity. In 13 points of error, she complains of the jury's failure to find Crawford negligent or to award damages.

Ritchey asserts in her first five points of error that the trial court erred in entering judgment and in overruling her motion to set aside the verdict, to disregard findings on certain issues, and to grant a new trial, because there is no evidence, or insufficient evidence, to support the jury's answer to special issue number one. Ritchey also asserts that the trial court erred in overruling her motion because the jury's finding in response to special issue number one was so against the great weight and preponderance of the evidence as to be manifestly unjust and unfair.

Special issue number one reads:
"On the occasion in question, was Dr. Crawford negligent?"
To which the jury answered, "No."

The current standards of review of sufficiency of the evidence and their underpinnings were delineated in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), where the Texas Supreme Court held that a "no evidence" point on appeal should be treated as a question of law. 150 Tex. at 664, 244 S.W.2d at 661. A "no evidence" point asks whether there is any evidence of probative force to support the jury verdict; if such evidence exists, then the jury's finding is conclusive and binding on both the trial court and on this Court. *Id.*

▪ When reviewing an appellant's "no evidence" point of error, an appellate court need consider only the evidence that supports the findings and will disregard all contrary or conflicting evidence. *In re King's Estate*, 150 Tex. at 664, 244 S.W.2d at 661; *Pfeffer v. Southern Texas Laborers' Pension Trust Fund*, 679 S.W.2d 691, 694 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In such a circumstance, this Court must determine "whether the evidence as a matter of law requires a conclusion contrary to the verdict." *In re King's Estate*, 150 Tex. at 664, 244 S.W.2d at 661. If the jury has failed to answer a particular issue in favor of an appellant having the burden of proof on the issue,

the verdict will be upheld against a "no evidence" challenge even though there is no evidence to support the jury's negative finding.

We overrule Ritchey's points asserting "no evidence" to support the jury's finding that Crawford was not negligent, because Ritchey had the burden at trial to show that Crawford *was* negligent; Crawford did not carry the burden to prove that he was *not* negligent. Thus, Ritchey has the burden of demonstrating on appeal that the evidence *conclusively* established all vital facts in support of the issue. This, as is discussed below, she has failed to do. *See generally Middleton v. Palmer*, 601 S.W.2d 759, 765 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 364 (1960).

Ritchey also asserts that the evidence is factually insufficient to support the jury's answer to special issue number one, and that the jury's negative finding is against the great weight and preponderance of the evidence. Under this assertion, she argues that Crawford's use of the Hydron procedure was negligent both in the surgical method employed and in the use of an amount of Hydron so large as to enter Ritchey's sinuses.

▪ Factual insufficiency and "great weight" points of error are not questions of law on appeal; they are questions of fact. Thus, this Court must "consider and weigh all of the evidence in the case and [this Court is] to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this [is true] regardless of whether the record contains some 'evidence of probative force' in support of the verdict." *In re King's Estate*, 150 Tex. at 664, 665, 244 S.W.2d at 661;[1] *Pfeffer*, 679 S.W.2d at 694.

---

1. In his article, Justice Calvert notes that "insufficient evidence" points and "great weight" points are generally both classified as "insufficient evidence" points. 38 Tex.L.Rev. at 366.

There is a distinction between these points. "Insufficient evidence" is appropriate when evidence adduced to support the vital fact, even if it is the *only* evidence adduced on an issue, is

The Texas Supreme Court has also recognized an appellate court's obligation to review, on insufficiency and great weight points, a jury's negative answer to a special issue. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986); *see also M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620 (Tex.App.—Houston [1st Dist.], 1987, no writ). The Court determined that the standards set forth in *In re King's Estate* apply to a jury's negative answer to a special issue. *Pool*, 715 S.W.2d at 633–635. Under *Pool*, when the jury negatively answers a special issue on which the appellant has the burden of proof, the proper standard for review of a factual sufficiency point is still "great weight and preponderance," and the courts of appeals are directed to exercise their fact jurisdiction *only* to prevent a manifestly unjust result. "[We] are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable." *Id.* at 634 (quoting *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985) (Robertson, J., concurring)).

In considering these "factual insufficiency" points, we must consider and weigh all the evidence in the record, and we must uphold the jury's finding on the issue unless we find that its verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. at 664, 665, 244 S.W.2d at 661. This standard of review is applicable to appellant's "factual insufficiency" claims, even though the appellant had the burden of proof on the issue. *See Pool*, 715 S.W.2d at 634; *Sheridan & Son Co.*, 731 S.W.2d 620.

■ Although there is evidence in the record from which the jury might have reached a different conclusion on the issue, the record does not show that the evidence is so contrary to the jury's finding as to be manifestly wrong. There was testimony that Dr. Crawford began to treat Ritchey, a patient with an admittedly pre-existing sinus condition, for a problem in her upper right molar. In his treatment, Crawford attempted, but was unable, to find a fourth canal he saw on Ritchey's x-ray. He referred Ritchey to an endodontist who, after examining Ritchey, advised Crawford that he, too, could not locate the fourth canal, and that the tooth would probably have to be excised.

The evidence is conflicting both as to whether Ritchey insisted on keeping the tooth and as to the nature and extent of Crawford's explanation regarding the consequences of a root canal procedure using Hydron, a surgical procedure offered by Crawford as a possible means of saving her tooth. Crawford testified that he had never informed Ritchey of the risk that Hydron could enter her nasal cavity, saying that he perceived the risk to be very remote, and that in the event Hydron did enter the cavity, he believed that it would not cause damage because it was biologically inert.

Although Crawford had performed many root canals, he had never before done so using Hydron. He testified that he practiced on some excised teeth prior to conducting the procedure on Ritchey, and referred to instructions while he was working. Despite Crawford's lack of such experience, both Crawford and Ritchey's expert, Dr. Carl Trepagnier, an endodontist, agreed on the necessary procedure to follow when performing a root canal. Their testimony as to proper and accepted procedure was substantially similar. Some evidence exists that a professionally accepted procedure was used in Ritchey's case. In addition, while it is true that Crawford admitted "that you are not supposed to perforate the patient's sinus when you are trying to fill a root canal," two of appellant's experts, Dr. James C. Garrett and Dr. Carl M. Trepagnier, admitted that dentists do occasionally get foreign matter into the sinuses. Trepagnier even admitted

factually too weak alone to support it. *Id.* A point of error asserting that the jury's *affirmative* finding is against the "great weight" simply asserts the insufficiency of the evidence to support a finding of the existence of a vital fact

when the great preponderance of the evidence supports its non-existence. The *Calvert* article, however, does not fully discuss the problem of a *negative* finding on an issue, the burden of proving which is carried by the appellant.

that a dentist could be as careful as possible and still get some material into the sinuses.

There was also a factual dispute as to whether Crawford performed the procedure against the advice of Trepagnier. Trepagnier's testimony was that he did not affirmatively suggest to Crawford that he use Hydron, but that he could not remember if he specifically advised Crawford not to use it. Crawford testified that Trepagnier was not against the idea of Crawford's using Hydron.

Conflicting testimony also exists as to the amount of Hydron that entered Ritchey's sinuses as a result of the procedure. Ritchey's expert, Dr. Garrett, the surgeon who removed the Hydron from Ritchey's sinuses, testified that it would be negligent for any dentist to allow foreign material to enter a person's sinuses "if the material was the size of a nickel or quarter." Garrett testified that he believed the amount found in Ritchey's sinuses to be the size of a nickel or quarter but his estimate was based on examining an x-ray, not on what was actually extracted. Crawford introduced testimony from a pathologist, Dr. J.C. Lee, who had examined the entire specimen removed from Ritchey's sinuses. The pathologist concluded that the actual amount of Hydron entering Ritchey's sinuses was only 13.4 centimeters long and .3 centimeters wide, which is actually smaller than a dime. The specimen was also introduced into evidence. Testimony from both Garrett and Trepagnier revealed that careful and prudent dentists could unintentionally allow a small amount of foreign substance into a person's sinuses and still be within the standard of care for an ordinary dentist.

The following trial excerpts support the jury's refusal to find Crawford negligent:

Q. [MR. MATTIESEN]: You can be as careful as you want to be and sometimes you're going to get something in the sinus if you do enough root canals?

A. [DR. TREPAGNIER]: That's correct.

MR. MATTIESEN: That's all I have.

FURTHER EXAMINATION BY MR. CANNON:

Q. But not this much, right?

MR. MATTIESEN: Well, we don't know how much.

A. I don't know how much it was.

Q. Assume it's the size that the man described that took it out, and that is, a nickel to a quarter. Can you avoid that always if you're careful?

A. Yes.

MR. CANNON: That's all.

---

Q. [MR. MATTIESEN]: As we've just pointed out, my name is Dave Mattiesen. I represent Dr. J.T. Crawford, the general dentist up in Huntsville in this matter. You've gotten foreign objects up into the sinuses, haven't you, in your practice, albeit a little bit of gutta percha or a little bit of some root canal material?

A. [DR. TREPAGNIER]: During root canal treatments?

Q. During any kind of treatment.

A. I've put a root tip—when I was in general practice I had a root tip go into a sinus.

Q. That's something no matter how careful you are is going to happen from time to time if you do enough of these?

A. Correct?

MR. CANNON: When you say "that," you mean a root tip in the canal?

Q. (BY MR. MATTIESEN) A foreign object of some description, albeit a root tip or albeit anything getting into the sinus cavity, it's going to happen from time to time if you do enough endodontic treatments?

A. I would think so.

---

Q. [MR. CANNON]: And then you think after you used it on some extracted teeth and you got a feel for the material and you put in a block, as you referred to, and you took x-rays as you went along, in no case would you get the Hydron in my sinuses?

A. [DR. TREPAGNIER]: No, I don't think that I could make a blanket statement that in no case would I get Hydron in your sinuses.

Q. If you were careful, you did the block carefully, you took the x-rays as you went along and you knew the feel of the Hydron, could you keep from getting—

A. You could keep—you might get a little out the end of the root. We do that sometimes.

Q. I'm talking about enough that's the size of a nickel or quarter.

A. No, I would not do that.

---

Q. [MR. CANNON]: How would you do that?

A. [DR. GARRETT]: I would place my needle, or whatever I injected with, at the apex; x-ray it; measure how far down I needed to go to put the Hydron, or whatever, in; inject; and pull out as I injected.

Q. And if you did that, you wouldn't get a quarter's worth in the sinus cavity?

A. You shouldn't. I might get some. You shouldn't get a lot. You might get some.

Even if there was *no* evidence that Crawford was not negligent, the jury's answer would still be correct where the jury could not find from a preponderance of the evidence that Crawford acted negligently. The record does not, accordingly, show that the jury's finding on the first special issue is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d at 635; *Brown v. Armstrong*, 713 S.W.2d 725, 729 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.).

We therefore overrule Ritchey's first five points of error.

Ritchey's sixth through thirteenth points of error assert that the jury's answers to special issues three through six are so against the great weight of the evidence as to be manifestly unjust and that the trial court erred in overruling her motion to set aside those answers because they are against the great weight and preponderance of the evidence.

Special issues three through six asked the jury to consider what sum of money would compensate Ritchey for past injuries, future injuries, reasonable medical expenses in the past, and reasonable medical expenses in the future. The jury responded "0" to each special issue.

 The refusal of the jury to award damages is not error where, as here, the jury has answered all special issues on liability in the negative. *Johnson v. Whitehurst*, 652 S.W.2d 441, 449 (Tex.App.— Houston [1st Dist.] 1983, writ ref'd n.r.e.). Because the jury refused to find Crawford negligent, it could properly have found, in response to special issues six through thirteen, that Ritchey was not entitled to any damages. The record is not without an adequate foundation for the jury's findings. Testimony from Dr. J.C. Lee, a pathologist, established that Ritchey had chronic sinusitis before the dental procedure was performed, and Lee concluded that the presence of Hydron in the sinuses did not cause Ritchey's chronic sinusitis. Ritchey herself admitted that she had sinus problems at least as far back as 1979. Her personal physician, Dr. Robert K. Mahaffey, testified that Ritchey had chronic sinusitis in the late 1970's, and certainly by the end of 1980.

Appellant's sixth through thirteenth points of error are overruled.

The judgment of the trial court is affirmed.