Betsy MULLINS and Mullins Investment
Limited Partnership, Appellants,

v.

Don MULLINS, Appellee.

No. B14–93–00095–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 27, 1994.

Rehearing Overruled Dec. 22, 1994.

**551**

Richard N. Countiss, John H. Holloway, Houston, for appellants.

Donald B. McFall, Richard A. Sheehy, Lauren Beck, Julius Glickman, Houston, for appellee.

Before SEARS and LEE, JJ., and MORSE, J. (Sitting by Designation).

## OPINION

LEE, Justice.

Betsy Mullins and Mullins Investment Limited Partnership appeal from a judgment ordering appellants to pay a debt originally guaranteed by appellee. Appellants bring two points of error challenging the sufficiency of the evidence supporting the finding of mutual mistake and contending the evidence conclusively showed no mutual mistake. Appellee brings three cross-points of error complaining of the trial court's failure to award him attorney fees. We affirm.

Before the parties began divorce proceedings, Don Mullins personally guaranteed 25% of a promissory note for land purchased by 1283 Joint Venture. The total amount of the debt under this note was $5,271,940.00. Don Mullins immediately transferred his interest in the joint venture to Mullins Investment Limited Partnership ("MILP"), a family limited partnership in which Don and Betsy Mullins originally owned 25% each (the rest was owned by the Mullins' three children). Once divorce proceedings began, Don Mullins provided documents to Betsy Mullins showing the extent of his guaranty, which was originally $1,317,985.00, but had decreased due to payments made on the note. Betsy Mullins' inventory that was filed with the court listed this debt guaranteed for MILP and listed the amount of the debt as $768,500.00.

When the parties were negotiating their property division during the divorce action, a worksheet was prepared describing all assets and liabilities of the parties. This worksheet became a settlement agreement when signed on September 11, 1989 by both Don and Betsy Mullins. Although this worksheet indicated that Betsy Mullins would assume the

**552**

debt to "1283 Waller J.V.," the worksheet did not state the amount of the debt.

Testimony indicated that there were two joint ventures with similar names: 1283 Waller Limited and 1283 Joint Venture (sometimes called 1283 Waller Joint Venture). Don Mullins owned a small percentage in 1283 Waller Limited before and after the divorce. He also guaranteed a debt of approximately $111,000.00 for that entity, but this interest and debt were not transferred to MILP.

On October 17, 1989, Betsy and Don Mullins executed a Property Settlement Agreement, under which Betsy Mullins received Don Mullins' twenty-five percent (25%) interest in MILP. Betsy Mullins, as general partner of MILP, also executed an agreement indemnifying Don Mullins from all debts arising from the obligations listed in an attached Exhibit "A." This exhibit listed a debt owed to 1283 Waller J.V. in the amount of $111,693.64.

On October 11, 1991, appellee, Don Mullins, filed suit against appellants, Betsy Mullins and MILP, claiming that Betsy Mullins actually owed approximately $826,764.06 plus interest of $203.86 per day. Appellee alleged breach of contract, fraud, breach of fiduciary duty, coercion and duress, receipt of stolen property and misappropriation of confidential information, conversion, and estoppel. Appellants generally denied these allegations and raised the affirmative defenses of the statute of frauds, parol evidence, merger, release, and estoppel, among others. Appellants also brought counterclaims, including a request for a declaration that appellants did not assume any debt in excess of $111,693.64.

Trial was by jury. In response to question one, the jury found that the attachment to the indemnity agreement contained a mistake. In response to question two, the jury found that the negligence of Don Mullins or his agents proximately caused the mistake in the indemnity agreement. The jury awarded no damages or attorney fees to either party. The trial court entered judgment reforming exhibit "A" attached to the indemnity agreement dated October 17, 1989 to reflect that appellants must assume the full amount of the debt appellee guaranteed for MILP on the 1283 Joint Venture. In particular, the judgment reformed the indemnity agreement such that appellants must indemnify appellee for the full amount of any monies appellee has actually paid or is obligated to pay pursuant to appellee's guaranty. The judgment noted that the full amount of this debt was evidenced by two promissory notes, attached as exhibits "C" and "D," which are promissory notes executed by appellee in favor of the FDIC. These notes reflect a total debt owed by appellee of $826,764.06 plus interest. The judgment, in pertinent part, requires appellee to provide proof that he has made any payments under the notes, that appellants shall reimburse appellee for payments already made on these notes, and that appellants shall assume the balances of the notes. The judgment awarded no attorney fees or costs.

In point of error one, appellants challenge the legal and factual sufficiency of the evidence supporting the jury's answer to question one regarding mistake. In point of error two, appellants contend the evidence conclusively proved the absence of a mutual mistake. We will address these points together.

■ In reviewing a legal sufficiency challenge, the court may consider only the evidence and inferences tending to support the finding, disregarding all contrary evidence and inferences. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force, we must uphold the finding. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988).

■ In reviewing a challenge to the factual sufficiency of the evidence, the court must examine all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). The court will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

■ The elements of proof for mutual mistake are:

(1) an original agreement, and

(2) a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing.

*Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex.1988) (emphasis in original). Once a prior agreement is established, equity may reform the written instrument to conform to this prior agreement, but cannot create an agreement not made by the parties. *Continental Oil Co. v. Doornbos,* 402 S.W.2d 879, 883 (Tex.1966). Knowledge by one party of the other party's mistake regarding the expression of the contract is equivalent to mutual mistake. *Cambridge Co., Inc. v. Williams,* 602 S.W.2d 306, 308 (Tex.Civ.App.—Texarkana 1980), *aff'd,* 615 S.W.2d 172 (Tex.1981). Thus, we must determine if evidence supports the jury's finding that a prior agreement existed whereby appellant agreed to assume the debt of approximately $800,000.00, and if so, whether the $111,000.00 figure was inserted in the written agreement by mutual mistake.

The evidence shows that Betsy Mullins was aware of the actual amount of the 1283 Joint Venture debt guaranteed by Don Mullins. Her inventory that was filed with the court lists "1283 Waller Joint Venture" as a debt guaranteed for MILP for $768,500.00. Don Mullins also filed an inventory with the court listing the same guaranty, but stating a debt balance of $830,000.00. The settlement offer worksheet does not reflect amounts of debts, but does show that Betsy Mullins agreed to assume the debts guaranteed by Don Mullins for MILP, including the 1283 Waller Joint Venture. The indemnity agreement, signed by Betsy Mullins on the same date as the parties executed the Property Settlement Agreement, states that she will indemnify and hold harmless Don Mullins from and against any claims and liabilities arising from or in any way related to the obligations described on the attached Exhibit "A." Exhibit "A" includes a "1283 Waller J.V." debt. The amount listed as guaranteed by Don Mullins, and guaranteed by Don Mullins for MILP, is $111,693.64 plus accrued interest.

The evidence shows that Don Mullins had personally guaranteed approximately $111,-000.00 for 1283 Waller Limited, but his interest in this entity was not transferred to MILP. Mike Thompson, Don Mullins' controller, testified that he supplied the amounts of the debts guaranteed by Don Mullins to the attorney drafting the divorce documents. Thompson admitted that he supplied the amount guaranteed on another debt for 1283 Waller Limited, rather than the amount guaranteed for 1283 Joint Venture or 1283 Waller Joint Venture.

This evidence indicates that Betsy Mullins was aware of the approximate amount of the debt guaranteed for MILP and agreed to assume it by signing her initials in the settlement offer draft. The evidence also shows that the final written agreement listed an erroneous amount. We find this to be sufficient evidence of mutual mistake. We overrule points of error one and two.

We turn now to appellee's three cross-points complaining of the trial court's failure to award him attorney fees. Appellee contends he is entitled to attorney fees as a matter of law, that he established the amount of attorney fees as a matter of law, and that the jury's failure to award fees is contrary to the overwhelming weight and preponderance of the evidence. Appellee points to paragraph 5.08 of the Property Settlement Agreement which provides for the recovery of reasonable attorney fees and other costs incurred by a party seeking enforcement of the agreement or divorce decree. Furthermore, appellee relies on TEX.CIV.PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1986) for recovery of attorney fees when the claim is based on a contract.

Appellants respond with the following arguments: (1) the jury found that Don Mullins' negligence caused the mistake, and negligence should not be rewarded by the recovery of attorney fees; (2) the jury was not required to believe Don Mullins' attorney; (3) counsel for appellee did not segregate his fees among the causes of action for which attorney fees are recoverable and non-recoverable; (4) there can be no recovery under the contract because appellee sued on the Indemnity Agreement, rather than the Property Settlement Agreement, which contains no provision for the recovery of attorney fees; and (5) there can be no recovery of fees

under § 38.001 because there was no presentment.

■■ Where, as here, the party with the burden of proof contends he established his right to recovery as a matter of law, he must demonstrate that the evidence conclusively established all vital facts in support of the issue. *Ritchey v. Crawford*, 734 S.W.2d 85, 86 (Tex.App.—Houston [1st Dist.] 1987, no writ). When a party with the burden of proof raises a "great weight and preponderance" point, we may exercise our fact jurisdiction only to prevent a manifestly unjust result. *Id.* at 86–87 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986)).

■■ Where a suit is founded upon a written contract, such as a property settlement agreement, a prevailing party in a suit to enforce the terms of the agreement may recover reasonable attorney fees. *See, e.g., Praeger v. Wilson*, 721 S.W.2d 597, 601 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.); TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). As a general rule, the party seeking to recover attorney fees carries the burden of proof. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991). The primary consideration is that the trial court may award those fees that are "reasonable and necessary" for the prosecution of suit. *Id.*

■■ Don Mullins' suit alleged a mutual mistake in the Indemnity Agreement. Appellants contend the Indemnity Agreement, which does not provide for recovery of attorney fees, is separate and independent from the Property Settlement Agreement, which does provide for recovery of attorney fees. Indeed, the Property Settlement Agreement does not require execution of, or even mention, an indemnity agreement. Furthermore, the Indemnity Agreement is not an exhibit or attachment to the Property Settlement Agreement. Instead, the Indemnity Agreement is a separate, independent agreement. The suit is based upon an alleged mutual mistake in the Indemnity Agreement and, because this agreement does not contain a provision for recovery of attorney fees, we hold that there is no contractual right to recover attorney fees. Therefore, the trial court did not err in refusing to award attorney fees under the provision in the Property Settlement Agreement.

■■ Even if we were to hold that the Indemnity Agreement was related to, or inseparable from, the Property Settlement Agreement, we would nevertheless find this provision inapplicable to Don Mullins' claim for fees. This provision in the Property Settlement Agreement permits recovery of attorney fees to the party "seeking *enforcement* " of this agreement or the divorce decree. Appellee's suit was not to enforce the agreement, but to correct a mutual mistake in the Indemnity Agreement by reformation.

Although it presents a different factual setting, *Village Med. Center, Ltd. v. Apolzon*, 619 S.W.2d 188 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) examines why attorney fees are not available in a suit to reform a contract. In *Apolzon*, prospective purchasers brought suit on a real estate contract, seeking specific performance or damages. *Id.* at 189. On appeal, the purchasers complained of the trial court's refusal to award attorney fees. *Id.* at 191. The appellate court offered the following explanation:

> The purchasers assume their recovery was based upon the terms of the written contract, however there is nothing in the trial court judgment that states such was the basis of the judgment. The purchasers sought specific performance and damages, neither of which was granted. The judgment essentially returns the parties to their original status by ordering the return of the purchasers' deposit, enjoining the purchasers from interfering with sellers' tenants and property, and clearing the sellers' title to the property from claims of the purchasers. There is no recovery by purchasers under the judgment that would entitle them to recovery under Article 2226, Tex.Civ.St. [now codified in TEX.CIV. PRAC. & REM.CODE ANN. § 38.001].

*Id.* Appellee did not seek to enforce the Property Settlement Agreement, but sought to reform it. The court's judgment essentially returned the parties to their original status by reforming the agreement to reflect the parties' intended agreement. Therefore, the

trial court did not err in refusing to award attorney fees.

■ To recover attorney fees under Chapter 38 of Texas Civil Practice & Remedies Code, a claimant must: (1) be represented by an attorney; (2) present the claim to the opposing party. TEX.CIV.PRAC. & REM. CODE ANN. § 38.002 (Vernon 1986). Additionally, payment must not have been tendered before the expiration of the 30th day after the claim is presented TEX.CIV.PRAC. & REM.CODE ANN. § 38.002 (Vernon 1986). No particular form of presentment is required. *Adams v. Petrade Intern., Inc.* 754 S.W.2d 696, 719 (Tex.App.—Houston [1st Dist.] 1988, writ denied). All that is necessary is assertion of debt or claim and request for compliance made to the opposing party. *Id.*

Regarding presentment of the claim, the only evidence in the record is Don Mullins' testimony that when he discovered the mistake in the Indemnity Agreement, he wrote a letter to his attorney. He added that "We advised my ex-wife and her lawyer, Mr. David Werner." Appellee contends presentment is shown by stipulation; however, this stipulation only pertains to non-payment. We find no evidence that appellee presented a claim to appellants and requested compliance. Thus, we agree with appellants that there is insufficient evidence of presentment and appellee is not entitled to recover attorney fees under § 38.001. Because appellee has not shown entitlement to attorney fees either under the contract or § 38.001, the trial court did not err in refusing to award attorney fees. We overrule cross-points of error one through three.

We affirm the trial court's judgment.