Opinion by Justice Hinojosa *87 Appellant the State Office of Risk Management (SORM) appeals from a judgment rendered in accordance with a jury's verdict and in favor of Arnold Pena, guardian of Juan Carlos Pena (J.C.), establishing that J.C. sustained a compensable injury while in the course and scope of his employment with the Texas Health and Human Services Commission (HHSC). In two issues, SORM challenges the legal and factual sufficiency of the evidence supporting the jury's verdict. We affirm.
I. BACKGROUND
A. Pena I
This is the second appeal involving the dispute between SORM and Arnold. As we explained in Pena v. State Office of Risk Management , J.C. was seriously injured in a single-vehicle accident while traveling northbound on Ware Road in McAllen, Texas. No. 13-12-00712-CV, 2014 WL 4494509, at *1 (Tex. App.-Sep. 11, 2014, pet. denied) (mem. op.). Arnold, on behalf of J.C., sought workers' compensation benefits on the contention that J.C. was injured while traveling from his assigned HHSC office in McAllen to a 1:30 p.m. mandatory training at an HHSC office in Edinburg, Texas, one of McAllen's northern neighboring cities. SORM challenged Arnold's request on the grounds that the accident occurred at approximately 12:06 p.m., during J.C.'s uncompensated lunch hour, and HHSC provided J.C. with thirty minutes of compensated travel time that, according to SORM, began at 1:00 p.m.
Arnold's request for workers' compensation benefits was denied by a hearing officer and an administrative appeals panel, which affirmed the hearing officer's findings. He sought judicial review of the appeals panel's decision in a district court. SORM moved for summary judgment on the grounds that Arnold had no evidence J.C. sustained: (1) an injury during the course and scope of his employment on the date of the accident; and (2) a disability as a result of a compensable injury. Arnold responded by arguing that J.C. was injured while he was traveling within the course and scope of his employment because he was traveling to a mandatory, work-related training and the travel constituted a "dual purpose." Arnold attached, among other things, deposition excerpts from J.C.'s co-workers in the McAllen office: Dalia Salinas, supervisor of HHSC's McAllen office; Norma Longoria, a member of J.C.'s work team; Luz Maria Esparza Hinojosa, J.C.'s "temporary" supervisor; and Anna Maria Pena, J.C.'s aunt and a co-worker assigned to a different unit. See id. at *4-5.
The trial court granted SORM's motion for no evidence summary judgment. Id. at *1. In Pena I , we reversed and remanded for further proceedings, concluding that Arnold had presented fact issues necessitating reversal of the summary judgment. Id. at *6.
B. Proceedings on Remand
On remand, the case was tried to a jury, which heard live, in-court testimony from the aforementioned co-workers and Arnold. Additionally, the trial court admitted as an exhibit excerpts from the deposition of Marcia Claeys, Hinojosa's assistant; and counsel for SORM read to the jury excerpts *88 from the deposition of Elina Lorena Antu, who claimed to have broken off an engagement to J.C. days before the accident.
The questioning at trial focused on whether J.C. was or was not "working" during the noon hour on the date of the accident and where J.C. was going at the exact time of the accident. Claeys recognized an email that she sent to several HHSC employees, including J.C., the day before the accident, which read, "THSteps Training tomorrow @1:30pm has been change[d] from Regional to Edinburg HHSC Office @ 2520 Nth Closner." Salinas testified that the training was mandatory, and J.C. was directed to attend it by his supervisor. On the day of the accident, Hinojosa met with several employees and released them at noon so that they could attend the 1:30 p.m. training. Salinas and Hinojosa testified that the normal lunch hour for HHSC employees is noon to 1:00 p.m. The lunch hour is, according to Salinas, uncompensated; and employees may, according to Hinojosa, leave the office during the lunch hour.
Salinas and Ana Maria testified that any HHSC employee would be entitled to seek mileage reimbursement for using a personal vehicle to travel from the McAllen HHSC office to the Edinburg HHSC office to attend the training. Salinas clarified that the reimbursement amount is limited to the shortest distance. Hinojosa, Longoria, and Ana Maria each testified that there was no workplace prohibition on lunchtime travel to Edinburg.[1]
Salinas did not recall whether any employees scheduled to attend the training returned to the McAllen office at 1:00 p.m. Hinojosa affirmatively stated that no employee scheduled to attend the training returned to the McAllen office after the noon lunch hour.
No witness had personal knowledge of where J.C. was traveling to at 12:06 p.m., the exact time of the accident. Ana Maria testified that Ware Road is a possible route to Edinburg. A map, admitted as an exhibit, depicts what appears to be the McAllen HHSC office, J.C.'s home, which is several blocks northeast of the McAllen HHSC office, and the accident site, which is several blocks north of J.C.'s home at the intersection of Ware Road and Daffodil Avenue. The exhibit specifically shows:
*89 Hinojosa further testified that employees were not required to use their lunch hour to travel to the training. Instead, employees scheduled to attend the training were provided thirty minutes of compensated travel time. Hinojosa's preferred route from the McAllen to the Edinburg office was through Expressways 83 and 281. This route, according to Hinojosa, is the quickest. Salinas took that route the morning of the trial, and she described it as "pretty hectic." When asked, "Is that pretty normal for-", Salinas answered, "Yes." Antu testified that, at the time of the accident, she was employed at Briarcliff Nursing Home, which is located on the northwest corner of Ware Road and Daffodil Avenue. On the day of the accident, J.C. and Antu did not exchange any calls, texts, emails, or Facebook messages.
The jury determined that J.C. sustained a compensable injury in the course and scope of his employment with HHSC. The trial court signed a final judgment reversing the administrative appeals panel's decision, establishing that J.C. sustained a disability as a result of a compensable injury during his employment with HHSC, and awarding attorney's fees to Arnold's counsel. SORM moved for a judgment notwithstanding the verdict and alternatively for a new trial, to which Arnold responded. SORM's request for a new trial was overruled by operation of law. This appeal followed.
II. LEGAL SUFFICIENCY
In SORM's first issue, it contends that the "evidence is legally insufficient to support *90 the jury's verdict that J.C. was in the course and scope of his employment when he was involved in a motor vehicle accident six minutes into his scheduled, unpaid lunch hour and no witness knew what J.C. Pena intended to do on his lunch hour or where he was headed at the time of his motor vehicle accident."
A. Standard of Review
Arnold bore the burden of proof at trial. See TEX. LAB. CODE ANN. § 410.303 (West, Westlaw through 2017 1st C.S.) ("The party appealing the decision on an issue described in Section 410.301(a) has the burden of proof by a preponderance of the evidence.").
When the appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which it did not have the burden of proof at trial, such as SORM in this case, it must demonstrate that there is no evidence to support the adverse finding. City of Keller v. Wilson , 168 S.W.3d 802, 807-08 (Tex. 2005) ; Croucher v. Croucher , 660 S.W.2d 55, 58 (Tex. 1983). We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. City of Keller , 168 S.W.3d at 807. "Our traditional legal sufficiency-or 'no evidence'-standard of review upholds a finding supported by '[a]nything more than a scintilla of evidence.' " In re K.M.L. , 443 S.W.3d 101, 112 (Tex. 2014) (quoting Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc. , 960 S.W.2d 41, 48 (Tex. 1998) ). More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. Burbage v. Burbage , 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc. , 434 S.W.3d 142, 156 (Tex. 2014).
B. Applicable Law
The Texas Labor Code defines "course and scope of employment" as:
an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations.
TEX. LAB. CODE ANN. § 401.011(12) (West, Westlaw through 2017 1st C.S.). The statute also contains two exclusions: (1) the coming-and-going exclusion, and (2) the dual-purpose exclusion. See Leordeanu v. Am. Prot. Ins. Co. , 330 S.W.3d 239, 244 (Tex. 2010).
The coming-and-going exclusion provides that transportation to and from the place of employment is generally not included under the term course and scope of employment. TEX. LAB. CODE ANN. § 401.011(12)(A) ; Leordeanu , 330 S.W.3d at 248. It in turn contains three disjunctive exceptions, only two of which were submitted to the jury,[2] that each effectively place *91 such travel back within the course and scope of employment. The first relevant exception, sometimes called the paid travel exception, is for transportation to and from the place of employment that is furnished as part of the contract of employment or is paid for by the employer. TEX. LAB. CODE ANN. § 401.011(12)(A)(i). The second relevant exception, sometimes called the special mission exception, is for transportation to and from the place of employment where "the employee is directed in the employee's employment to proceed from one place to another place." Id. § 401.011(12)(A)(iii).
The dual-purpose exclusion excludes from the definition of course and scope of employment "travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee." Id. § 401.011(12)(B). The Texas Supreme Court has acknowledged that the dual-purpose exclusion is "somewhat convoluted." Leordeanu , 330 S.W.3d at 244. Its complexity stems from the words used and its historical origin and development alongside the coming-and-going exclusion. The dual-purpose exclusion has an exception that contains two elements. TEX. LAB. CODE ANN. § 401.011(12)(B)(i)-(ii). Travel escapes the dual-purpose exclusion and is effectively within the course and scope of employment if:
(i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and
(ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.
Id. (emphasis added). The Texas Supreme Court has explained that the dual-purpose exclusion and its exception "does not exclude work-required travel from the course and scope of employment merely because the travel also furthers the employee's personal interests that would not, alone, have caused him to make the trip." Leordeanu , 330 S.W.3d at 244. The court applied the exception to the dual-purpose exclusion in two cases where the employee had left work to travel out-of-town for both business and personal reasons and was killed in a car accident on the return trip. Id. at 245 (citing Davis v. Argonaut Sw. Ins. Co. , 464 S.W.2d 102, 102-103 (Tex. 1971) ; Jecker v. Western Alliance Ins. Co. , 369 S.W.2d 776, 779 (Tex. 1963), overruled in part on other grounds by McKelvy v. Barber , 381 S.W.2d 59 (Tex. 1964) ). In both cases, the court held that "there was evidence to support jury findings that the deaths were compensable under the 'dual purpose' rule." Id. (citations omitted). The court also noted that the coming-and-going exception developed separately, specifically for travel between home and work. Id. (citations omitted).
C. Analysis
In SORM's initial brief, it contends that Arnold presented no evidence supporting the "originates in the work" and the "furtherance of the affairs or business of the employer" prongs within the definition of course and scope of employment. See TEX. LAB. CODE ANN. § 401.011(12). SORM also raises three arguments that relate to its legal sufficiency challenge. We begin our analysis with the two prongs of the definition of course and scope of employment *92 and then turn to SORM's individual arguments.
1. The Origination Prong
As for the origination prong, Salinas testified that the training was mandatory, and J.C. was directed to attend the training by his supervisor. We conclude that this constitutes some evidence that would allow a reasonable fact finder to conclude that J.C.'s travel originated in his employment at HHSC-thus, establishing the first prong. See Leordeanu , 330 S.W.3d at 244.
2. The Furtherance Prong
As for the furtherance prong, Arnold responds by arguing:
The second component of work related travel as explained by the Courts, is that if the travel must further the affairs of the employer. In the instant case, a mandatory training seminar. The rationale behind establishing the second component as expressed by [t]he Texas Supreme Court seems simplistic and self-fulfilling once the first component is established, i.e. originating from work. The Supreme Court noted that "[a]n employee's travel to and from work makes employment possible and thus furthers the employer's business, satisfying the second component of the [course and scope of employment] definition ..." Leordeanu v. Amer. Protection Ins., 330 S.W.3d 239, 242 (Tex. 2010)....
In Arnold's appellee's brief, he posits, as he did in the summary judgment proceeding, that there is legally sufficient evidence supporting the exceptions to the coming-and-going and the dual-purpose exclusion, which would bring the travel back within the definition of course and scope. See TEX. LAB. CODE ANN. § 401.011(12)(A)-(B).
In Pena I we reviewed the evidence that Arnold tendered in response to SORM's motion for summary judgment on no evidence grounds regarding the coming-and-going and the dual-purpose exclusions. See 2014 WL 4494509, at *3-6. At that time, Arnold argued that there was legally sufficient evidence of the paid-travel and special mission exceptions to the coming-and-going exclusion.[3] See TEX. LAB. CODE ANN. § 401.011(12)(A)(i) (providing that "the transportation furnished as a part of the contract of employment or is paid for by the employer"), (iii) (providing that "the employee is directed in the employee's employment *93 to proceed from one place to another place"). In summarizing the evidence regarding Arnold's argument, we wrote:
[Arnold] attached the deposition testimony of several of J.C.'s co-workers, who testified that the employees who had attended the seminar in Edinburg could have applied for reimbursement of their mileage. Specifically, when asked if the employees who attended the seminar were entitled to travel reimbursement, Dalia Salinas, a supervisor with [HHSC], replied, "Yes." Salinas clarified, however, that travel reimbursement is not mandatory and many of the employees do not ask for it. Later, when asked what the employees are entitled to receive when they request reimbursement, Salinas responded, "Just the mileage ... [of] the shortest distance." Next, Norma Longoria, an assistant to the supervisor with [HHSC] at the time of the accident, testified that the employees "are allowed reimbursement." Finally, when Luz Maria Esparza Hinojosa, a temporary supervisor on the day of the accident, was asked, "Is the mileage from McAllen to Edinburg paid by the State," she replied, "What happens is that if we-yeah. I mean, we can claim the mileage, depending on how much. It has to be a certain amount. You kind of add it up until it adds up to like about $50, or 50-once it's over $50 then we do claim it."
Pena I , 2014 WL 4494509, at *4 (footnote omitted). At trial, the jury heard from Salinas, Longoria, and Hinojosa; and, as recounted in the background section, their in-court testimony comports with our assessment of their deposition testimony in Pena I . This evidence is relevant to our analysis.
We find Arnold's reliance on Leordeanu and the threshold it sets for the furtherance prong of the definition of course and scope of employment to be apt. See Leordeanu , 330 S.W.3d at 242 ("An employee's travel to and from work makes employment possible and thus furthers the employer's business, satisfying the second component of the definition, but such travel cannot ordinarily be said to originate in the business...."). A reasonable fact finder could conclude that J.C.'s travel from the McAllen HHSC office, J.C.'s place of employment, to the Edinburg HHSC office to attend mandatory, work-related training, furthered HHSC's business. See id.
3. SORM's Arguments Fall Short
SORM's legal sufficiency challenge also contains three arguments that fall short. First, SORM contends that "even if jurors could infer J.C. was driving to Edinburg at 12:06 p.m., they could also easily infer that he was on a distinct errand or departure because his lunch hour had just begun." According to SORM, such an inference violates the equal inference rule, which provides that a jury may not reasonably infer an ultimate fact from meager circumstantial evidence which could give rise to any number of inferences, none more probable than another. See Hancock v. Variyam , 400 S.W.3d 59, 70-71 (Tex. 2013). Under SORM's argument, Arnold not only had the burden to prove that J.C. was in the course and scope of his employment, but he was also obligated to negate "a distinct errand or departure" that exists in SORM's mind. SORM's faulting of Arnold for not negating such "a distinct errand or departure" undermines its legal sufficiency argument. That the jury was presented with no evidence of "a distinct errand or departure" suggests that the jury would have been speculating about one had that been the case. On the other hand, evidence of northbound travel on a possible route to Edinburg that was not described as "pretty *94 hectic" allows for a reasonable inference that J.C. was traveling toward the Edinburg HHSC office.
Second, SORM places much stock in the testimony that HHSC employees are not compensated for the noon hour, they received thirty minutes of compensated travel time beginning at 1:00 p.m. on the date of the training, and the accident occurred at 12:06 p.m. SORM essentially posits that J.C. was "off the clock" as a matter of law. But compensation is not included in the definition of scope of employment. See TEX. LAB. CODE ANN. § 401.011(12). Moreover, Hinojosa, Longoria, and Ana Maria each testified that there was no workplace prohibition on lunchtime travel to Edinburg. Even if compensation were something that the jury should have considered, it heard from Salinas and Ana Maria that J.C. would be entitled to mileage reimbursement for using his personal vehicle to travel to the Edinburg HHSC office. Thus, there was some evidence to allow for a reasonable inference that J.C. would be reimbursed for travel by the shortest distance to Edinburg.
Third, SORM's reliance on Davis v. Texas Mutual Insurance Company is misplaced. 443 S.W.3d 260 (Tex. App.-Dallas 2014, pet. denied). In Davis , an employee stationed at a Dallas office traveled on a Saturday to New York City to attend a business meeting on the upcoming Monday. Id. at 264. On the Sunday before the business meeting, the employee was fatally injured when a bicycle struck him as he was walking approximately ten blocks from his hotel room. Id. The employee's family lost in the administrative proceedings. Id. at 262. In response to a summary judgment motion filed by the employer's workers' compensation insurance carrier, the family asserted that he was within the course and scope of employment under the "continuous coverage" rule and that the insurance carrier bore the burden of proving that walking ten blocks from the hotel was a distinct departure on a personal errand. Id. at 267-68. The trial court granted summary judgment in the insurance carrier's favor, and the court of appeals affirmed. Id. at 262-64. The appellate court rejected the family's attempt to shift the burden of proof. Id. at 268. The "continuous coverage" rule is not at issue in this case.
4. Disposition
Having found that Arnold presented legally sufficient evidence supporting the jury's finding that J.C. sustained a compensable injury in the course and scope of his employment with HHSC and having rejected SORM's legal sufficiency arguments, we overrule SORM's first issue.
III. FACTUAL SUFFICIENCY
In SORM's second issue, it contends that the evidence is "factually insufficient to support the jury's verdict considering that J.C.'s employer did not direct, require, or expect its employees to travel to training at 12:06 p.m.; J.C. was left to his own devices for his entire unpaid lunch hour; and the evidence was completely silent regarding J.C.'s intentions for his lunch hour." SORM does not direct us to neither any specific prong in the definition of course and scope of employment nor to the coming-and-going or dual-purpose exclusions. Instead, SORM's factually sufficiency challenge is phrased as a general attack on the evidence.
The party attacking the factual sufficiency of a finding on which an adverse party bore the burden of proof must show that the record presents "insufficient evidence" to support the finding. Gooch v. Am. Sling Co., Inc. , 902 S.W.2d 181, 184 (Tex.App.-Fort Worth 1995). In reviewing *95 an insufficient-evidence issue, we examine and consider all of the evidence, not just the evidence that supports the verdict, to see whether it supports or undermines the finding. Mar.Overseas Corp. v. Ellis , 971 S.W.2d 402, 406-07 (Tex. 1998). We set aside the finding for factual insufficiency if the "evidence adduced to support the vital fact, even if it is the only evidence adduced on an issue, is factually too weak alone to support it." See Ritchey v. Crawford , 734 S.W.2d 85, 86-87 n.1 (Tex. App.-Houston [1st Dist.] 1987, no writ) (quoting Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error , 38 TEX. L. REV. 361, 366 (1960) ).
We reject SORM's factual sufficiency challenge. Like in SORM's legal sufficiency challenge, its factual sufficiency challenge is premised on a mistaken belief that Arnold bore the burden to prove that J.C. was paid a wage at the exact minute that the accident occurred. Instead, Arnold bore the burden of proof regarding the definition of course and scope of employment as defined by the labor code. See TEX. LAB. CODE ANN. § 401.011(12). The evidence that at the time of the accident J.C. was traveling northbound on a road that led to Edinburg, the training was in Edinburg, and the road J.C. was on did not necessitate travel on "pretty hectic" highways is not factually too weak alone to support the jury's verdict. See Ritchey , 734 S.W.2d at 86-87 n.1.
SORM's second issue is overruled.
IV. CONCLUSION
We affirm the judgment of the trial court.

Hinojosa was asked, "So they were free to go directly to Edinburg if they chose. There was nothing-you didn't tell them, don't go to Edinburg until 1 o'clock?" Hinojosa answered, "No." Longoria was asked, "On that day, no one said how and when you were supposed to go to Edinburg. In other words, no one came to you that day and said, can't travel to Edinburg before you have lunch. Did anyone tell you anything like that?" Longoria answered, "No." Ana Maria was asked, "Did anyone tell you not to go to Edinburg during the lunchtime?" Ana Maria answered, "No."

In this case, the jury charge, submitted without objection by any party, largely mirrors the relevant provisions of the labor code. See Tex. Lab. Code Ann. § 401.011(12) (West, Westlaw through 2017 1st C.S.). In assessing the legal sufficiency of the evidence supporting the jury's verdict where the jury charge was submitted without objection, we look to the jury charge. See Seger v. Yorkshire Ins. Co. , 503 S.W.3d 388, 407 (Tex. 2016) (providing that a legal sufficiency review is restricted to the jury charge as submitted when there was no objection to the instruction). For ease of reference, we cite to the relevant labor code provisions that guided the jury.

In SORM's reply brief, it contends that Arnold may not rely on the paid travel or special mission exceptions to the coming-and-going exclusion and that there is legally insufficient evidence of the exceptions to the dual-purpose exclusion. Relying on Leordeanu , SORM argues that the "Texas Supreme Court has instructed lower courts that the 'coming and going' rule is to be applied to travel between home and employment while the dual purpose doctrine is to be applied with both a work and personal purpose between employment and a place other than home."
SORM's challenge to the paid travel or special mission exceptions was unpreserved below. The definitions section of the jury charge includes the paid travel and special mission exceptions as they appear in the labor code, see Tex. Lab. Code Ann. § 401.011(12)(A)(i), (iii), and SORM did not object to these definitions at the trial level. See Tex. R. Civ. P. 274 ("Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."). Thus, SORM's complaint has been waived, see itation index="42" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20401.011">id. , and we must review the legal sufficiency of the evidence against the unobjected-to jury charge. See Seger v. Yorkshire Ins. Co. , 503 S.W.3d 388, 407 (Tex. 2016). Moreover, SORM's challenge to the exceptions to the dual-purpose exclusion are waived before us because they were first made in its reply brief. See McAlester Fuel Co. v. Smith Int'l, Inc. , 257 S.W.3d 732, 737 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) ("An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court.").