ACCEPTED
08-24-00036-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
10/25/2024 4:10 PM
ELIZABETH G. FLORES
CLERK

08-24-00036-CV

NO. 08-24-00036-CV

IN THE COURT OF APPEALS
FOR THE EIGHTH DISTRICT OF TEXAS
AT EL PASO

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
10/25/2024 4:10:54 PM
ELIZABETH G. FLORES
Clerk

TRANSPORTATION CONCEPTS, INC., and ELOY CANALES,

*Appellants,*

v.

BRIAN RAMIREZ,

*Appellee.*

On Appeal from the 131ST Judicial District Court, Bexar County,
Cause No. 2021 CI 04603, Hon. Norma Gonzales, Presiding

## APPELLEE'S BRIEF

Thad D. Spalding
State Bar No. 00791708
tspalding@dpslawgroup.com
Lauren S. Harbour
State Bar No. 24070649
lharbour@dpslawgroup.com
DURHAM PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 – Office
(214) 946-8433 - Facsimile

Fidel Rodriguez, Jr.
State Bar No. 17145500
fidel@fidrodlaw.com
RODRIGUEZ TRIAL LAW
231 W. Cypress Street
San Antonio, Texas 78212
(210) 777-5555 – Office
(210) 224-0533 - Facsimile

**Attorneys for Appellee**

**ORAL ARGUMENT CONDITIONALLY REQUESTED**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................ v

STATEMENT REGARDING ORAL ARGUMENT ...................................................... xii

RECORD CITATIONS ..................................................................................... xii

RESTATEMENT OF ISSUES PRESENTED .............................................................. xiii

INTRODUCTION ............................................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

    A.   TCI's employee causes a collision with Mr. Ramirez when he attempts an unprotected left turn in a tractor trailer. .......................... 2

    B.   TCI negligently supervised its employee by choosing the route he was to take—a route that required him to make the unprotected left turn. ............................................................... 3

    C.   The jury finds Mr. Ramirez, Canales, and TCI all negligent in causing the collision. ........................................................... 5

SUMMARY OF ARGUMENT ............................................................................... 6

ARGUMENT & AUTHORITIES ............................................................................ 7

    I.   The negligent supervision claim against TCI ............................. 7

        A.   Standard of Review—Legal and Factual Sufficiency ............... 7

        B.   TCI's stipulation to course and scope did not render the direct negligence claims against it "legally invalid." ........................ 9

        C.   The gross negligence claim was not a "sham." ...................... 15

        D.   Legally and factually sufficient evidence supports the negligent supervision finding. ............................................... 16

E.   Submission of the negligent supervision claim does not require a new trial. ................................................ 19

II.   The trial court did not abuse its discretion in admitting or excluding certain evidence. ................................................ 21

A.   Standard of Review — Abuse of Discretion. ............................ 21

B.   Roger Allen's testimony regarding TCI's negligent supervision was proper. ......................................................... 21

1.   Roger Allen is qualified to talk about the trucking industry and TCI's supervision of its drivers. .................................. 22

2.   Roger Allen's testimony on route selection is reliable and relevant to TCI's negligent supervision of Canales. ........... 24

C.   Allen's opinions regarding TCI's gross negligence were relevant and reliable. .................................................... 27

D.   Steve Christofferson's testimony on negligent supervision is reliable. ................................................................. 29

E.   Admission of these experts' testimony was not harmful error. ................................................................................. 31

F.   The exclusion of evidence that Mr. Ramirez lacked a driver's license was not error. ................................................. 32

1.   The lack of a driver's license was not relevant to TCI's contributory negligence defense. ........................................ 32

2.   The exclusion of such evidence was not harmful. .............. 34

III.   There was no incurable jury argument. ..................................... 35

A.   Standard of Review. ............................................................. 35

**PAGE**

B.    Jury argument suggesting a per diem or unit of time measurement for noneconomic damages is proper................ 36

IV.  "Cumulative error" does not warrant a new trial. ..................... 39

CONCLUSION & PRAYER................................................................. 40

CERTIFICATE OF COMPLIANCE ........................................................ 43

CERTIFICATE OF SERVICE................................................................ 43

**CASES**                                                       **PAGE(S)**

*4Front Engineered Solutions, Inc. v. Rosales,*
505 S.W.3d 905 (Tex. 2016)...................................................................... 33

*Arreola v. Union Pac. R.R.,*
657 S.W.3d 789 (Tex. App.—El Paso 2022, no pet.)................................. 40

*Ashlike v. Mullen Crane & Transp., Inc.,*
No. 2:12CV11DAK, 2014 WL 3640735 (D. Utah July 23, 2014).......... 24, 25

*Atlantic Industries, Inc. v. Blair,*
457 S.W.3d 511 (Tex. App.—El Paso 2014).............................................. 11

*Bedford v. Moore,*
166 S.W.3d 454 (Tex. App.—Fort Worth 2005, no pet.) .......................... 11

*Birchfield v. Texarkana Mem. Hosp.,*
747 S.W.2d 361 (Tex. 1987)...................................................................... 28

*Black v. Smith Protective Servs., Inc.,*
No. 01-14-00969-CV, 2016 WL 5400565
(Tex. App.—Houston [1st Dist.] Sep. 23, 2016, no pet.).......................... 10

*Bogdanski v. Budzik,*
408 P.3d 1156 (Wyo. 2018)....................................................................... 15

*Brown v. Eaves 4:21-cv-959-KPJ,*
2022 WL 17812441 (E.D. Tex. Dec. 19, 2022)......................................... 22

*Cain v. Bain,*
709 S.W.2d 175 (Tex. 1986)........................................................................ 9

*Castro v. Schlumberger Tech. Corp.,*
673 S.W.3d 294 (Tex. App.—San Antonio 2023, no pet.) ........................ 32

*Cent. Ready Mix Concrete Co., Inc. v. Islas,*
228 S.W.3d 649 (Tex. 2007)........................................................................ 7

# TABLE OF AUTHORITIES (CONT'D)

**CASES**                                                                 **PAGE(S)**

*Chemical Exp. v. Cole*,
   342 S.W.2d 773 (Tex. Civ. App.—Dallas 1961, writ ref'd n.r.e.) .............. 38

*City of Brownsville v. Alvarado*,
   897 S.W.2d 750 (Tex. 1991) ................................................................. 21

*City of Keller v. Wilson*,
   168 S.W.3d 802 (Tex. 2005) ................................................................ 7, 8

*Coastal Transportation Co. v. Crown Central Petroleum Corporation*,
   136 S.W.3d 227 (Tex. 2004) ................................................................. 28

*Continental Bus Sys., Inc. v. Toombs*,
   325 S.W.2d 153 (Tex. Civ. App.—Fort Worth 1959, writ ref'd n.r.e.) ...... 38

*Continued Care, Inc. v. Fournet*,
   979 S.W.2d 419 (Tex. App.—Beaumont 1998, pet. denied) ..................... 10

*Cox v. Swift Transp. Co. of Ariz. & LLC*,
   No. 18-CV-0117-CVE-JFJ, 2019 WL 3719887 (N.D. Okla. Aug. 7, 2019) .. 23

*Croucher v. Croucher*,
   660 S.W.2d 55 (Tex. 1983) ..................................................................... 8

*Dallas Nat'l Ins. Co. v. Morales*,
   394 S.W.3d 826 (Tex. App.—El Paso 2012, no pet.) .............................. 7, 8

*Enbridge Pipelines (N. Tex.) L.P. v. Sullivan*,
   614 S.W.3d 198 (Tex. App.—Tyler 2020, no pet.) ................................... 19

*Foradori v. Harris, 523 F.3d 477, 511-12 (5th Cir. 2008)* ................................ 38

*Garcia v. Allen*,
   28 S.W.3d 587 (Tex. App.—Corpus Christi-Edinburg 2002,
   pet. denied) ...................................................................................... 10

**CASES**                                                        **PAGE(S)**

*Garrett v. Great Western Distributing Co. of Amarillo,*
129 S.W.3d 797 (Tex. App.—Amarillo 2015, pet. denied) ...................... 10

*Garza v. Beck,*
No. 11-05-00067-CV, 2006 WL 1554606 (Tex. App.—Eastland
Jun. 8, 2006, no pet.) ................................................................................ 10

*Grant v. CRST Expedited, Inc.,* No. 1:18-CV-433, 2021 WL 2098967, at
*2 (E.D. Tex. March 10, 2021) ................................................................. 38

*Gregory v. Chohan,*
670 S.W.3d 546 (Tex. 2023) ..................................................... 36, 37, 38, 39

*Hernandez v. Baucum,*
344 S.W.2d 498 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.) .... 37

*Horton v. Kansas City So. Ry. Co.,*
692 S.W.3d 112 (Tex. 2024) ..................................................................... 20

*In re State Farm Mut. Auto. Ins. Co.,*
629 S.W.3d 866 ......................................................................................... 36

*J. D. Wright & Son Truck Line v. Chandler,*
231 S.W.2d 786 (Tex. Civ. App.—Galveston 1950, writ ref'd n.r.e.) ........ 38

*JTL Group, Inc. v. Gray-Dockham,*
510 P.3d 1060 (Wyo. 2022) ....................................................................... 15

*Knight v. City Streets, L.L.C.,*
167 S.W.3d 580 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ............ 10

*Legeland v. Kirk,*
No. 1:16-CV-676-DAE-ML, 2019 WL 4060893 (W.D. Tex. Jun. 5, 2019) .. 10

*Leitch v. Hornsby,*
935 S.W.2d 114 (Tex. 1996) ..................................................................... 18

**CASES**                                                                **PAGE(S)**

*Living Centers of Tex., Inc. v. Penalver,*
    256 S.W.3d 678 (Tex. 2008)........................................................ 35, 36, 37

*Louisiana & A. Ry. Co. v. Mullins,*
    326 S.W.2d 263 (Tex. Civ. App.—Texarkana 1959, writ ref'd n.r.e.) ....... 38

*Mackey v. U.P. Enters, Inc.,*
    935 S.W.2d 446 (Tex. App.—Tyler 1996, no pet.) .................................... 10

*Martinez v. Delta Brands, Inc.,*
    515 S.W.2d 263 (Tex. 1974)................................................................ 18

*McCraw v. Maris,*
    828 S.W.2d  (Tex. 1992)..................................................................... 31

*Medina v. Salinas,*
    736 S.W.2d 224 (Tex. App.—Corpus Christi-Edinburg 1987,
    writ denied) ......................................................................................... 33

*Moore Freight Servs., Inc. v. Munoz,*
    545 S.W.3d 85 (Tex. App.—El Paso 2017, pet. denied) ........................... 10

*Moore v. Strike, LLC,*
    No. 04-16-00324-CV, 2017 WL 96130 (Tex. App.—San Antonio Jan. 11,
    2017, no pet.)...................................................................................... 10

*Morris v. JTM Materials,*
    78 S.W.3d 28 (Tex. App.—Fort Worth 2002, no pet.) .............................. 10

*Mundy v. Pirie-Slaughter Motor Co.,*
    206 S.W.2d 587 (Tex. 1947)............................................................. 32, 33

*Newberry v. Newberry,*
    351 S.W.3d 552 (Tex. App.—El Paso 2011, no pet.)................................. 9

*Nissan Motor Co. v. Armstrong,*
    145 S.W.3d 131 (Tex. 2004)................................................................ 31

**CASES**                                                         **PAGE(S)**

*Ortiz v. Jones,*
917 S.W.2d 770 (Tex. 1996)................................................................ 8

*Patterson v. East Texas Motor Freight Lines,*
349 S.W.2d 634 (Tex. Civ. App.—Beaumont 1961, writ ref'd n.r.e.).... 9, 10

*Pitman v. Lightfoot,*
937 S.W.2d 496 (Tex. App.—San Antonio 1996, writ denied) ........... 39, 40

*Pool v. Ford Motor Co.,*
715 S.W.2d 629 (Tex. 1986)................................................................ 9

*Prim v. Stein,*
6 F.4th 584 (5th Cir. 2021)................................................................ 10

*Reliance Steel & Aluminum Co. v. Sevcik,*
267 S.W.3d 867 (Tex. 2008)............................................................... 31

*Service Corp. Int'l v. Guerra,*
348 S.W.3d 221 (Tex. 2011)............................................................... 21

*State Off. of Risk Mgmt. v. Escalante,*
162 S.W.3d 619 (Tex. App.—El Paso 2005, pet. dism'd)............................ 8

*State Off. of Risk Mgmt. v. Pena,*
548 S.W.3d 84 (Tex. App.—Corpus Christi 2018, no pet.) ........................ 8

*Sunset Brick & Tile, Inc. v. Miles,*
430 S.W.2d 388 (Tex. Civ. App.—Corpus Christi 1968, writ ref'd n.r.e.) 38

*Tex. Dep't of Mental Health & Mental Retardation v. Petty,*
848 S.W.2d 680 (Tex. 1992)............................................................... 37

*Torrington Co. v. Stutzman,*
46 S.W.3d 829 (Tex. 2000)................................................................ 17, 18

# Table Of Authorities (Cont'd)

**Cases**                                                                                          **Page(s)**

*Uniroyal Goodrich Tire Co. v. Martinez,*
   977 S.W.2d 328 (Tex. 1998)............................................................................ 8

*Univ. of Tex. Med. Branch v. York,*
   871 S.W.2d 175 (Tex. 1994).......................................................................... 37

*Van Winkle v. Rogers,*
   No. 16:19-cv-1264, 2022 WL 4231013 (W.D. La. Sept. 13, 2022).............. 22

*Werner Enters., Inc. v. Blake,*
   672 S.W.3d 554 (Tex. App.—Houston [14th Dist.]
   2023, pet. granted)........................................................................ 11, 13, 14

*Werner v. Colwell,*
   909 S.W.2d 866 (Tex. 1995).......................................................................... 18

*Westbrook v. Gen. Tire & Rubber Co.,*
   754 F.2d 1233 (5th Cir. 1985) ...................................................................... 38

*Williams v. Steves Indus., Inc.,*
   699 S.W.2d 570 (Tex. 1985).......................................................................... 33

**Rules**

Tex. R. App. P. 44.1(a) ........................................................................................ 21

Tex. R. Civ. P. 162.............................................................................................. 16

Tex. R. Civ. P. 165.............................................................................................. 16

**Statutes**

Tex. Civ. Prac. & Rem. Code § 33.003(a) ........................................................ 13

Tex. Civ. Prac. & Rem. Code § 72.053............................................................. 12

Tex. Civ. Prac. & Rem. Code §§ 72.051-55...................................................... 12

**OTHER AUTHORITIES**                                     **PAGE(S)**

Restatement (Second) of Torts § 323 (1965)..................................................... 18

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Brian Ramirez believes that Appellants have failed to show any error in how the trial of this case was handled, the jury's findings, or the final judgment and that this Court can reach that same conclusion based on the record and arguments before it, without the need for oral argument. However, in the event that this Court grants oral argument, Appellee respectfully requests this Court allow him to participate.

## RECORD CITATIONS

The 4 volume Clerk's Record will be referred to by volume number and then page number—*e.g.*, 2 CR 1.

The Reporter's Record consists of 13 volumes. References to the first 12 volumes of the Reporter's Record will be by volume and page number—*e.g.*, 2 RR 2. Volume 13 of the Reporter's Record includes trial exhibits. Appellee shall refer to those exhibits by volume, exhibit number, and exhibit page number—*e.g.*, 13 RR PX # at #.

**1.  Submission of a negligent supervision claim against TCI** *(Responsive to Issues Presented Nos. 1 & 2)*.

a.  Was the submission of a negligent supervision claim against Transportation Concepts, Inc. ("TCI") proper where the claim is supported by the legally and factually evidence and by Texas law?

b.  If so, was it error to submit a legally valid, direct negligence claim against TCI simply because TCI stipulated that its employee-driver was in the course and scope of his employment at the time of the collision with Mr. Ramirez and no gross negligence claim was submitted to the jury?

c.  Finally, if it was error to submit the legally valid, direct negligence claim against TCI, did TCI show that any such error was harmful?

**2.  Evidentiary Issues** *(Responsive to Issues Presented Nos. 3 & 4)*.

a.  Did the trial court abuse its discretion in admitting the testimony of Mr. Ramirez's safety and trucking expert, Roger Allen?

b.  Did the trial court abuse its discretion in admitting the testimony of Mr. Ramirez's accident reconstructionist, Steve Christofferson?

c.  Did the trial court abuse its discretion in excluding evidence that Brian Ramirez did not have a valid Texas driver's license at the time of the collision?

d.  Assuming any of these evidentiary rulings constituted error, did TCI demonstrate that any such error was harmful?

*3.  Incurable jury argument (Responsive to Issue Presented No. 5).* Did Mr. Ramirez's counsel's use of a "per diem" measure of noneconomic damages during closing argument constitute "incurable jury argument"?

**4.     Cumulative error (*Responsive to Issue Presented No. 6*).**  Assuming more than one of the issues raised by Appellants constituted error, and assuming that those errors individually were not harmful, did Appellants demonstrate that the cumulative effect of those alleged errors was harmful such that a new trial is warranted?

## INTRODUCTION

Appellants Transportation Concepts, Inc. and Eloy Canales (collectively "TCI") spend a great deal of their briefing saying (but never showing how) Mr. Ramirez's evidence and arguments at trial "poisoned," "prejudiced," and "tainted" the trial. TCI leans heavily into the argument that a direct negligence claim against TCI should have never been submitted and somehow harmed TCI when it was. In the process, however, TCI forgets about Mr. Canales, its driver who was found to be negligent and a proximate cause of the collision. TCI does not challenge his liability, for which it is vicariously liable. TCI also does not challenge the jury's valuation of Mr. Ramirez's injuries caused by the collision. Since these findings independently support the judgment, it is difficult to see how the errors TCI complains about here would have changed the outcome and they certainly do not bother to make that connection.

TCI and Canales focus almost exclusively (save for some evidentiary complaints and a patently incorrect claim of incurable jury argument) on a direct negligence claim against TCI it claims was legally invalid and not supported by the evidence. Of course, TCI fails to explain to the Court—like it failed to explain to the trial court below—how the negligent supervision

1

claim, based on TCI's negligence in selecting the route its employees are to drive, is either legally invalid or not supported by the evidence. More telling, however, is the outright failure to explain to this Court how the submission of that claim against TCI harmed it. That's because the claim was both legally and factually valid. Moreover, TCI stipulated to vicarious liability for its employee's conduct, which the jury found to be negligence and a proximate cause of the collision. TCI does not challenge that finding, or the damage values assigned by the jury. Therefore, there can be no harm to TCI and certainly TCI has not bothered to show any. The trial court did not commit error, the jury's verdict was supported by the evidence, and the final judgment should be affirmed.

## STATEMENT OF FACTS

### A. TCI's employee causes a collision with Mr. Ramirez when he attempts an unprotected left turn in a tractor trailer.

Mr. Ramirez was seriously and permanently injured when his car collided with a tractor trailer driven by Eloy Canales around 5:30 am, while it was still dark, on February 2, 2021. (1 CR 267-68; 2 CR 1277). Canales, an employee of and driver for Defendant TCI, failed to yield the right of way to Mr. Ramirez's vehicle from a stop sign, rolled into the intersection and

2

directly into Mr. Ramirez's lane of traffic, in the process of attempting to make an unprotected lefthand turn. (2 CR 1277). Before Defendant Canales could complete the risky turn and while his trailer was still blocking oncoming lanes of traffic, Mr. Ramirez collided with the middle of the trailer that was in his lane. (2 CR 1277). Canales failed to keep a proper lookout and failed to ensure he had sufficient time to make this dangerous left-hand turn and completely clear the trailer before any oncoming traffic, like Mr. Ramirez who had the right-of-way, reached him. (2 CR 1277-78). On appeal, Canales and TCI do not dispute that Canales was negligent or that his negligence proximately caused the wreck.

**B.     TCI negligently supervised its employee by choosing the route he was to take — a route that required him to make the unprotected left turn.**

In supervising its drivers, TCI charged certain "operations" employees to scout and determine designated routes for its drivers to take. (6 RR 184:21-185:1; 2 CR 1279-80). TCI's operations manager, Jimmy Wren, selected the route Mr. Canales took to exit the Amazon fulfillment center. (6 RR 184:23-185:1; 2 CR 1280). The Verde Parkway route, which included an unprotected left-hand turn, was selected after Mr. Wren spent approximately one hour during the daytime driving around the facility. (6 RR 185:2-7; 2 CR 1280).

3

Mr. Wren did not consider any other routes in making his selection, including a route that would not have required an unprotected left turn. (7 RR 40:21-41:3; 2 CR 1280). Once the selection was made by TCI, its driver was "instructed" to take this route. (2 CR 1280)

Mr. Ramirez's expert, Roger Allen, discussed the problem with TCI choosing this particular route. According to Mr. Allen, the safest route from the Amazon warehouse to IH 35 was for Mr. Canales to use Mid Cities Parkway which provided a straight drive to the southbound IH 35 access road and a right turn onto the access road." (4 RR 81:10-14). Mr. Allen also reviewed TCI's own "Professional Truck Driver Training Program" which noted the statistics on the dangers of making left hand turns as compared to right hand turns. (4 RR 71:17-22). TCI thus knew that a route like the one it required its employee take, that included an unprotected left turn, particularly at 5:30 a.m., was significantly more risky than another, available route. (4 RR 189:25-190:20; 6 RR 178:22-180:10). TCI just never bothered to tell any of its employees about the risks associated with this route. (4 RR 73:17-25).

None of TCI's local employees—whether in safety, operations, or professional drivers, including Mr. Canales—had ever seen or heard of this

4

Program. (4 RR 149:3-12, 159:1-11; 6 RR 177:17-178:3). Not surprisingly, TCI's own local safety and operations personnel—the ones responsible for supervising its professional drivers—did not understand or comprehend the proper way to handle right-of-ways, left-hand turns, and driving conditions at night versus daytime. (6 RR 178:22-180:10; 6 RR 185:8-186:18). This fundamental misunderstanding of the risks associated with Canales's route was compounded by the fact that Mr. Wren, the one responsible for choosing the route Mr. Canales was required to take, had never held a commercial driver's license, never operated an 18-wheeler, and was unfamiliar with even the most basic knowledge of the relevant state and federal regulations regarding motor carriers. (6 RR 156:5-18).

## C. The jury finds Mr. Ramirez, Canales, and TCI all negligent in causing the collision.

Faced with this evidence, the jury found each party to be negligent and a proximate cause of the collision. (4 CR 4446-47). TCI's negligence was submitted separately from its employee and each theory—negligent training and supervision—were submitted separately. The jury rejected Mr. Ramirez's claim of negligent training but found that TCI was negligent in its supervision of its employee—a claim that centered on TCI's selection of the

5

route its employees were required to take. (4 CR 4448). The jury further apportioned fault among the parties, finding Mr. Ramirez twenty-percent (20%) responsible, Mr. Canales twenty-three percent (23%) responsible, and TCI fifty-seven percent (57%) responsible. (4 CR 4449). The trial court entered a final judgment consistent with the jury's verdict (4 CR 4492-4496) and this appeal followed.

## SUMMARY OF ARGUMENT

There was no error in how the trial of this case was conducted, how it was submitted, or its outcome. TCI—at least in significant part—agrees. Rather, TCI focuses, rather selfishly, on itself and the finding of direct negligence against it. But, this finding was supported by the evidence and none of the trial court rulings on evidence, expert testimony, or the claim's ultimate submission impacted the validity or the accuracy of the jury's finding. TCI, by its own admission, was responsible for its employee's negligence and was also responsible for its own. The Final Judgment, which accurately reflected the jury's findings, was correct and should be affirmed.

**ARGUMENT & AUTHORITIES**

## I.    The negligent supervision claim against TCI.

TCI focuses the bulk of its brief on the negligent supervision claim against it and the jury's finding that TCI was directly liable on that claim. TCI devotes two of its issues, each with various subparts, to this complaint. However, the complaint can really be reduced to two principal arguments: (1) TCI's claim that the negligent supervision is legally invalid because it stipulated to course and scope and Mr. Ramirez withdrew his gross negligence claim at the end of trial; and (2) the negligent supervision finding is not supported by the evidence. *See* Appt. Br. at 8-37. Both arguments are without merit.

### A.    Standard of Review—Legal and Factual Sufficiency

When determining whether evidence is legally sufficient to support a jury's finding, appellate courts consider "evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not." *Dallas Nat'l Ins. Co. v. Morales*, 394 S.W.3d 826, 830–31 (Tex. App.—El Paso 2012, no pet.) (citing *Cent. Ready Mix Concrete Co., Inc. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "Evidence is legally

7

insufficient only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *Dallas Nat'l Ins.* Co, 394 S.W.3d. at 831 (citing *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied,* 526 U.S. 1040 (1999)). A "no-evidence" point fails if more than a scintilla of evidence supports the challenged finding. *Id.* (citing *State Off. of Risk Mgmt. v. Escalante,* 162 S.W.3d 619, 624 (Tex. App.—El Paso 2005, pet. dism'd)). This is true "[w]hen the appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which it did not have the burden of proof at trial." *State Off. of Risk Mgmt. v. Pena,* 548 S.W.3d 84, 90 (Tex. App.—Corpus Christi 2018, no pet.) (citing *City of Keller,* 168 S.W.3d at 807–08; *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983)).

As to factual sufficiency of the evidence, appellate courts "examine all the evidence in the record, both for and against the lower court's findings, and reverse only if it is so against the great weight of the evidence as to be clearly wrong and unjust." *Dallas Nat'l Ins. Co.,* 394 S.W.3d at 831 (citing *Ortiz*

*v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Newberry v. Newberry,* 351 S.W.3d 552, 555–56 (Tex. App.—El Paso 2011, no pet.). Additionally, "[w]hen reviewing a challenge that the evidence is factually insufficient to support a finding, a reviewing court will set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, the court determines that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside." *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## B. TCI's stipulation to course and scope did not render the direct negligence claims against it "legally invalid."

TCI's first argument is that the submission of a negligent supervision claim against it requires reversal because it is legally invalid. *See* Appt. Br. at 9. TCI is wrong for several reasons.

First, TCI's admission of vicarious liability for its employee's conduct did not bar Mr. Ramirez from pursuing the negligent supervision claim. TCI relies on *Patterson v. East Texas Motor Freight Lines*, 349 S.W.2d 634, 636 (Tex. Civ. App.—Beaumont 1961, writ ref'd n.r.e.), and its progeny to support this

9

argument. *See* Appt. Br. at 10. But, the law is not as clear cut as TCI wishes it to be.

First, a stipulation as to course and scope does not render the direct negligence claim "legally invalid." The claim remains valid.[1] *Patterson* simply holds that absent allegations of gross negligence, direct negligence claims are *immaterial* once the stipulation to course and scope is made. *See id.* at 636. But the claim remains viable and was supported by the evidence in this case, as demonstrated below.

---

[1] In the trial court, TCI took the position that because the Texas Supreme Court had yet to officially adopt a direct negligence claim like negligent supervision, the negligent supervision claim was somehow invalid. (4 CR 4559). TCI does not make that same argument here, and for good reason. All Texas courts of appeals, including this one, and the Fifth Circuit recognize negligent supervision as a viable cause of action in Texas. *See e.g.*, *Moore Freight Servs., Inc. v. Munoz*, 545 S.W.3d 85, 97-98 (Tex. App.—El Paso 2017, pet. denied); *Garrett v. Great Western Distributing Co. of Amarillo*, 129 S.W.3d 797, 803 (Tex. App.—Amarillo 2015, pet. denied); *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Morris v. JTM Materials*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.); *Garcia v. Allen*, 28 S.W.3d 587, 592 (Tex. App.—Corpus Christi-Edinburg 2002, pet. denied); *Continued Care, Inc. v. Fournet*, 979 S.W.2d 419, 421 (Tex. App.—Beaumont 1998, pet. denied); *Mackey v. U.P. Enters, Inc.*, 935 S.W.2d 446, 459 (Tex. App.—Tyler 1996, no pet.); *Moore v. Strike, LLC*, No. 04-16-00324-CV, 2017 WL 96130, at *7 (Tex. App.—San Antonio Jan. 11, 2017, no pet.) (mem. op.); *Black v. Smith Protective Servs., Inc.*, No. 01-14-00969-CV, 2016 WL 5400565, *5 (Tex. App.—Houston [1st Dist.] Sep. 23, 2016, no pet.) (mem. op.); *Garza v. Beck*, No. 11-05-00067-CV, 2006 WL 1554606, *1 (Tex. App.—Eastland Jun. 8, 2006, no pet.) (mem. op.); *see also Prim v. Stein*, 6 F.4th 584, 592 (5th Cir. 2021); *Legeland v. Kirk*, No. 1:16-CV-676-DAE-ML, 2019 WL 4060893, *6 (W.D. Tex. Jun. 5, 2019).

More importantly, however, the rule set out in *Patterson*—which TCI seems to have named "the admission rule"—is not a rule that enjoys universal acceptance. Not all courts adhere to *Patterson's* holding and this "rule" has never been adopted by the Texas Supreme Court or the San Antonio Court of Appeals, the court from which this case was transferred.[2] *See Werner Enters., Inc. v. Blake,* 672 S.W.3d 554, 586 (Tex. App.—Houston [14th Dist.] 2023, pet. granted) (noting that "respondeat superior admission rule" has not been recognized in the Fourteenth Court of Appeals district). In fact, there is a split in authority.

Contrary to *Patterson*, the Fort Worth Court of Appeals indicated a plaintiff may proceed with a negligence claim against both the employer and employee, and both theories of negligence may be submitted to the jury even when gross negligence is not asserted against the employer. *Bedford v. Moore*, 166 S.W.3d 454, 461-63 (Tex. App.—Fort Worth 2005, no pet.) ("[W]e hold that the proper submission in a simple negligent entrustment or hiring claim,

---

[2] The one El Paso case TCI cites, *Atlantic Industries, Inc. v. Blair*, 457 S.W.3d 511 (Tex. App. – El Paso 2014), *rev'd*, 482 S.W.3d 57 (Tex. 2016), does not support this conclusion. Rather, *Atlantic Industries* simply stands for the proposition that "negligent entrustment and *respondeat superior* are mutually exclusive modes of recovery." *See id.* at 517. But this is not a negligent entrustment case. *See* pages 17-18, below.

based upon sufficient evidence to warrant the submission, is to include the alleged negligent hiring or entrusting employer in an initial liability question and in the comparative negligence questions.").

In 2021, the Texas Legislature acknowledged that the *Patterson* rule is not the rule in Texas when it passed H.B. 19, which is now codified in Chapter 72 of the Texas Civil Practices and Remedies Code. By enacting H.B. 19, the Texas Legislature did not purport to create any new causes of action. Instead, the Legislature acknowledged that these direct negligence claims remain viable even in the face of a stipulation as to course and scope. The Legislature sets forth a new statutory scheme as to how such claims should be litigated going forward. Tex. Civ. Prac. & Rem. Code §§ 72.051-55 (providing for a bifurcated trial of claims against a driver of a commercial vehicle, and direct negligence claims against the driver's employer for claims such as negligent entrustment, negligent hiring, negligent retention, negligent supervision, and negligent training). In fact, under Chapter 72, when an employer stipulates that its driver was an employee acting within the course and scope of employment, such a stipulation merely affects the phase of trial in which a party may present certain evidence related to direct negligence *claims* against the employer. Tex. Civ. Prac. & Rem. Code § 72.053.

12

If the *Patterson* or "admission" rule were actually the law in Texas, this statutory scheme for trying direct negligence cases under Chapter 72 would have no purpose and be a nullity.

Applying *Patterson* as TCI contends would also ignore Texas Civil Practices and Remedies Code § 33.003(a)'s requirement that the trier of fact determine the percentage of responsibility attributable to each claimant, each defendant, each settling person, and each properly designated responsible third party. TCI's argument would require that the jury ignore entirely the independent responsibility of TCI. Indeed, the Chief Justice of the Fourteenth Court of Appeals in *Werner* acknowledged this tension, stating "I would not impose such a rule inasmuch as the proportionate-responsibility statute requires the trier of fact to determine the percentage of responsibility borne by each claimant, each defendant, each settling person, and each properly designated responsible third party." *Werner Enters. Inc.*, 672 S.W.3d at 624 (Christopher, C.J., dissent). In fact, Justice Christopher believed that the facts in *Werner Enterprises, Inc. v. Baker*, which are not unlike the facts presented here, made it "a clear example of why a separate submission is required" because "[a] jury could easily conclude that while [the driver] was negligent

13

in not slowing to a crawl, his employer was more negligent for having contradicted [his] training." *Id.*

As much as a defendant has a right to include every possible responsible third party in the apportionment question in an effort to reduce the risk that defendant is not jointly and severally responsible, a plaintiff also has that right—particularly, like here, where there are claims of contributory negligence—to reduce the risk that a jury finds his negligence to be over the fifty percent threshold to recovery.

Ultimately, TCI's argument assumes—wrongly—that the negligent supervision is simply another claim of derivative liability against TCI for its employee's negligence. *See* Appt. Br. at 12. But, the negligent supervision claim against TCI is not a claim that is contingent on Canales being negligent. Rather, it exists independently of Canales's negligence. Tellingly, the negligent supervision theory was not conditioned on a "yes" answer to Canales's negligence. (4 CR 4448). That is because TCI was negligent by requiring that Canales take a dangerous route and whether Canales executed the unprotected left turn negligently or not, it was negligence for TCI to make him even attempt it. Since the claim here was not derivative of

the negligence claim against Canales, the rule TCI seeks to have this Court apply here simply does not apply, even under TCI's authority.[3]

For all of these reasons, the direct, negligent supervision claim against TCI was properly submitted to the jury, even in the face of TCI's stipulation as to course and scope.

### C. The gross negligence claim was not a "sham."

Next, TCI tries to argue that Mr. Ramirez's gross negligence claim against TCI was a sham, but it is unclear for what purpose. *See* Appt. Br. at 12-14. TCI claims that Mr. Ramirez "should not have been able to use [his gross negligence claim] because [Mr. Ramirez] knew his claim for gross negligence was meritless—which he acknowledged after getting into the inflammatory evidence by dropping the claim before the charge

---

[3] TCI cites a Wyoming Supreme Court case for the proposition that the "admission rule" is essential for protecting the trial process's reliability by precluding highly prejudicial evidence and argument from tainting the jury's liability determination." *See* Appt. Br. at 11 (citing *Bogdanski v. Budzik,* 408 P.3d 1156, 1164 (Wyo. 2018)). Of course, as with most of TCI's cites, TCI only tells half the story. A more recent Wyoming Supreme Court case distinguishes *Bogdanski* and found that a direct negligence claim is properly submitted— even where TCI's so-called "admission rule" applies—where there is evidence of direct negligence on the part of the employer that is separate and independent from the employee's tortious conduct. *JTL Group, Inc. v. Gray-Dockham*, 510 P.3d 1060, 1067 (Wyo. 2022).

15

conference." *See* Appt. Br. at 13. Of course, no part of this statement is actually true.

A plaintiff can always choose to drop some or all of his claims prior to the submission of his claims to the jury. *See, e.g.,* Tex. R. Civ. P. 162, 165. TCI does not claim that the gross negligence claim was frivolous when it was pled or at any time during the trial. Rather, TCI simply attempts to implicate that the claim was meritless simply because Mr. Ramirez and his attorneys chose to drop it at the end of the trial. This was not an acknowledgment that the claim was meritless, nor could it have been considering that Mr. Ramirez had sufficient proof of TCI's gross negligence to survive TCI's motion for summary judgment and motion for directed verdict. (2 CR 1767; 9 RR 83:24-25). Ultimately, TCI's argument has no bearing on whether the negligent supervision claim was properly submitted. It was.

## D. Legally and factually sufficient evidence supports the negligent supervision finding.

Next, TCI claims that the evidence was legally and factually insufficient to support the negligent supervision claim. TCI seems to base this argument on a fundamental misunderstanding of negligence theory and the risk created by TCI's negligent supervision.

TCI continues to believe that negligent supervision could not be proven without some showing that Canales was an unfit or incompetent employee, citing to evidence that Canales was a qualified driver with prior experience. *See* Appt. Br. at 20. But, the risk here was different and one that TCI took upon itself to address for its drivers. Specifically, the risk involved an unprotected left turn that TCI made an unnecessary part of Canales's route. TCI's own corporate safety program, which it never bothered to implement locally, expressly recognized the inherent, heightened risk associated with unprotected left-hand turns. (4 RR 71:17-22). According to TCI's own written program, 53.1 percent of crossing-path crashes involve left turns, while only 5.7 percent involve right turns. (4 RR 71:17-22). In other words, left hand turns carry a ten-times-greater risk of a deadly collision. That is precisely the risk that was at issue in this case and the precise risk that proximately caused the collision and the injuries to Mr. Ramirez.[4]

---

[4] Surprisingly, TCI also argues briefly that Mr. Ramirez failed to prove that TCI owed any duty to select a different route or breached any such duty. *See* Appt. Br. at 23-26. Of course, this argument ignores the fact that a duty to use reasonable care may arise when a person undertakes to provide services to another, either gratuitously or for compensation. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). Under those circumstances, the party is subject to liability to the other if it fails to exercise care in doing so and that failure increases the risk of such harm, or the harm is suffered because of the

Competency of the driver is one thing. But, part of TCI's supervision of its employees involved planning the route for its drivers. And, in doing so, TCI knew that left hand turns are significantly—10 times—more dangerous than right hand turns. Yet, in this case, TCI's operations manager planned a route that almost immediately involved an unprotected left hand turn, in the dark, when an alternative, and safer, route was available. Had the alternative, safer route been given to Canales, this collision never would have happened. (4 RR 160:10-18).

TCI cites to Mr. Wren's testimony regarding the various reasons this particular route was chosen. *See* Appt. Br. at 34-35. But, there is no question that TCI knew that the route was more dangerous because it involved an unprotected left turn and ordered Canales to take that route anyway. Mr. Wren attempted to justify his decision to make Canales take the less safe

---

other's reliance upon the undertaking. *Id.* (citing *Restatement (Second) of Torts* § 323 (1965)). Here, TCI undertook a duty in the supervision of its employees to choose the safest route available for them. Its employees, like Mr. Canales, who are also owed a nondelegable duty by their employers to maintain a safe workplace, including adequate help for the performance of their work, was entitled to rely on TCI's reasonable execution of this duty. *See Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996); *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995); *see also Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, 265 (Tex. 1974).

18

route, but the jury was free to discredit his testimony. And they were certainly entitled to decide that TCI was negligent in the supervision as it relates to route selection. But, to argue that there is no evidence to support a claim for negligent supervision is simply without merit.

### E. Submission of the negligent supervision claim does not require a new trial.

Ultimately, TCI wants a new trial, but fails to show why it is entitled to one. *See* Appt. Br. at 14-17.[5] TCI claims that submitting the negligent supervision claim "poisoned the whole trial because it allowed Plaintiff to distract the jury from the events of the accident and make the litigation about TCI's alleged deficiencies." *See id.* at 14. This argument ignores the fact that the jury was able to focus on just the collision. The jury found both participants—Mr. Ramirez and Mr. Canales—to be responsible and

---

[5] TCI takes this argument a step further, claiming that "[t]he appropriate disposition under these circumstances is to reverse and render judgment in favor of TCI and remand the remaining claims against Canales for a new trial." *See* Appt. Br. at 16. Of course, the case TCI cites as support for this proposition, *Enbridge Pipelines (N. Tex.) L.P. v. Sullivan,* 614 S.W.3d 198 (Tex. App.—Tyler 2020, no pet.), has nothing in common with this case. The judgment in *Enbridge Pipeline* was not reversed and remanded for a new trial because it was tried on an invalid direct negligence theory, as TCI represents. Rather, the jury was only asked about the employee's negligence, not the employer, and the court ultimately reversed and remanded for a new trial because the jury was not given instructions to disregard the employer's conduct in deciding the employee's negligence, particularly where spoliation by the employer was a pervasive theme at trial. *See id.* at 218-19, 221.

apportioned responsibility among and between them. Tellingly, TCI does not question any other findings by the jury, including the liability of the two drivers and the damages Mr. Ramirez suffered.

TCI's direct negligence was submitted separately so there was no risk that its consideration would taint any other issue. In fact, both claims of negligent training and supervision were submitted separately, as TCI requested. The jury was able to consider all the evidence, differentiate between the two negligence claims, and answer them based on the evidence presented. If the negligent training question was correctly decided, TCI fails to show how the negligent supervision claim was not and, more importantly, how the simple fact of its submission somehow infected the entire trial.

TCI acknowledges that there is no basis to presume harm since the theory submitted was not an erroneous theory of law. *See* Appt. Br. at 16. Thus, TCI was required to show that any error in its submission probably caused the rendition of an improper judgment. *See Horton v. Kansas City So. Ry. Co.*, 692 S.W.3d 112, 146 (Tex. 2024). It failed to do so. No new trial is necessary or warranted.

## II. The trial court did not abuse its discretion in admitting or excluding certain evidence.

### A. Standard of Review—Abuse of Discretion.

The admission or exclusion of evidence is committed to this Court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex. 1991); *see also, e.g., Service Corp. Int'l v. Guerra,* 348 S.W.3d 221, 235 (Tex. 2011). The court abuses its discretion when it acts without regard for any guiding rules or principles. *City of Brownsville,* 897 S.W.2d at 754.

Even where a trial court abuses its discretion, the party seeking to reverse a judgment based on evidentiary rulings must show that the admission or exclusion probably resulted in an improper judgment—*i.e.,* that the judgment turns on the particular evidence excluded or admitted. *Id.* at 753-54; *see also* Tex. R. App. P. 44.1(a).

### B. Roger Allen's testimony regarding TCI's negligent supervision was proper.

TCI complains of Roger Allen's testimony and opinions regarding TCI's negligent supervision of Mr. Canales, claiming that his opinions are speculative and unreliable. TCI lost this argument twice, prior to trial and again during trial. TCI also seems to—for the first time—criticize Mr. Allen's qualifications. Although waived because that objection was never raised at

trial,[6] out of an abundance of caution, Mr. Ramirez will show how Mr. Allen is qualified and how his opinions are reliable and admissible.

### 1. Roger Allen is qualified to talk about the trucking industry and TCI's supervision of its drivers.

In one paragraph, citing a single case, TCI attempts to discredit Mr. Allen's qualifications even though they have never complained about his qualifications before. *See* Appt. Br. at 37-38. That criticism is without merit.

Mr. Allen is a highly qualified commercial truck driving expert. Over the last ten years, countless courts have acknowledged Roger Allen as an expert in commercial trucking. In *Brown v. Eaves*, for example, the Southern District of Texas concluded that "Mr. Allen's CV highlights his extensive experience not only as a commercial driver, but also as a Safety Director, Transportation Consultant, Transportation Manager, General Manager, and Truck Broker." Civ. Action No. 4:21-cv-959-KPJ, 2022 WL 17812441, at *3 (E.D. Tex. Dec. 19, 2022). Based on his experience alone, that court found Mr. Allen was qualified to render opinions on Federal Motor Carrier Safety Regulations. *Id*. (citing *Van Winkle v. Rogers*, No. 16:19-cv-1264, 2022 WL 4231013, at *2 (W.D. La. Sept. 13, 2022) (referencing a string of cases that have

---

[6] In its motion to strike Mr. Allen's opinions, TCI only claimed that "Mr. Allen's opinions are unreliable, biased, and unsupported." (2 CR 1480).

found Mr. Allen is qualified as an expert in the commercial trucking industry, including safety regulations and industry standards)).

TCI cites a single case from Oklahoma and a single sentence in that case to question Mr. Allen's qualifications. *See* Appt. Br. at 38 (citing *Cox v. Swift Transp. Co. of Ariz. & LLC*, No. 18-CV-0117-CVE-JFJ, 2019 WL 3719887, at *6 (N.D. Okla. Aug. 7, 2019)). That case does not support TCI's claim. In *Cox,* the Oklahoma Court never actually limited Mr. Allen's testimony, but simply reserved that ruling for trial. *Cox,* 2019 WL 3719887, at *6. The court simply noted that the record was unclear regarding Mr. Allen's qualifications because it only had his single page resume before it. *Id*. But, the court never found him to be unqualified.

TCI even acknowledges (although downplaying it significantly) that Mr. Allen has "some experience" in commercial truck driving. *See* Appt. Br. at 38. What TCI fails to mention, however, is that Mr. Allen's experience includes driving more than two million miles on roadways as a commercial truck driver, vast knowledge of industry standards requiring an 18-wheeler to have proper clearance of the intersection before traffic reaches that intersection, and has more than forty-five years' experience in the commercial trucking industry as an owner, driver, educator, and consultant.

23

(4 RR 38-44). The implication that Mr. Allen is unqualified is belied by the record and, as the trial court determined twice, Roger Allen was qualified to testify as to TCI's negligent supervision of Canales.

### 2. Roger Allen's testimony on route selection is reliable and relevant to TCI's negligent supervision of Canales.

TCI's chief complaint has always been that Mr. Allen should have been prevented from testifying that TCI was required to advise its drivers of the safer, alternative Mid-Cities route that did not require an unprotected left-hand turn. *See* Appt. Brief at 37-38. As the trial court correctly determined in its gatekeeping role, Mr. Allen's testimony is not only relevant, but also reliable.

Once again, TCI reaches out of state to criticize Mr. Allen's opinions, this time relying on a single, unpublished federal District Court opinion from Utah for its argument that Mr. Allen cannot testify to industry standards. *Id.* at 39-40 (citing *Ashlike v. Mullen Crane & Transp., Inc.*, No. 2:12CV11DAK, 2014 WL 3640735 (D. Utah July 23, 2014)). Again, what TCI represents the case to say and what the case actually says are two very different things.

*Ashlike* simply restricted Mr. Allen's opinions, determining that he may not offer opinions contrary to the court's prior holdings regarding the application of the comparative fault system in relation to the Utah Trucking Guide, finding "such matters are issues of law which are decided by the court." *Id.*, 2014 WL 3640735 at *5. The Utah court did, however, confirm that Mr. Allen could testify to "industry standards and matters within his expertise." *Id*. If anything, *Ashlike* supports the trial court's decision to permit Mr. Allen's relevant and reliable testimony on the proper route TCI should have taken based on his "experience and industry standards."

Allen is qualified to testify as a trucking expert on proper route selection and his opinions on that topic are reliable. Indeed, the proper foundation for his expertise was presented to the jury. Mr. Allen testified at trial regarding his knowledge of FMCSR, the Commercial Vehicle Preventable Accident Manual, and his extensive knowledge and education in state and federal regulations. (4 RR 49-59). Mr. Allen has testified as an expert witness in more than 125 cases, including reviewing documents reflecting driver and company conduct to determine whether those actions violated federal and state regulations or industry standards. (4 RR 57).

Regarding route selection, Mr. Allen testified to his specific, extensive experience in designing and advising route selections for trucks and buses over his forty plus year career, noting that "route selection is one of the most important safety things that you can do when you're operating commercial motor vehicle." (4 RR 74:1-25). Mr. Allen also highlighted his extensive knowledge of state and federal regulations and industry standards regarding unprotected left-hand turns, citing to "federal guidelines and the J.J. Keller documents" which discuss the dangers and extreme caution necessary when making unprotected left-hand turns. (4 RR 60:4-20). Based on his experience in the industry, Mr. Allen made it clear for the jury that there "is no industry standard" at the federal or state level "that allows or permits an 18-wheeler driver to take a blind left turn" noting that it is "the most dangerous turn you can make". **(**4 RR 70:14-21).

TCI's criticism also ignores the reality that Mr. Allen did not need to go far to find a standard that prohibited such unprotected turns--TCI's own training program highlighted the extreme risks associated with left-hand turns, stating that "53.1 percent of crossing path crashes, which would be where a truck is making a left-hand turn where it's crossing, involve[e] left-hand turns, but only 5.7 percent involve right-hand turns." (4 RR 71:14-22).

26

The problem with TCI's training program was that it was never actually implemented at the local level to train TCI's drivers, including Canales. (4 RR 73:17-24, 160:10-22).

Armed with the industry knowledge regarding the dangers associated withs such turns, Mr. Allen personally inspected the scene and route used by TCI and Canales in this case. He observed the Amazon warehouse facility and all available routes leaving the facility and experience, testified that the safest, feasible route for Canales was via the Mid Cities parkway because it avoided an unprotected left-hand turn. (4 RR 75-90, 75:1-15; 178:4-7). Based on his knowledge, experience, and training, and of safety regulations, Mr. Allen concluded that TCI failed to properly supervise its employee when it "told him to go this way," . . . instead of the Mid Cities route. (4 RR 92:24-93:2; 113:4-9). That opinion was sound, reliable, and not speculative. The trial court properly admitted it.

### C. Allen's opinions regarding TCI's gross negligence were relevant and reliable.

Mr. Allen's opinions regarding TCI's gross negligence were also properly admitted. TCI claims that Mr. Allen's testimony was not based on proper foundation, that he was not qualified to testify regarding gross

negligence, and that any such testimony amounted to an unsupported, improper legal conclusion. *See* Appt. Br. at 41. TCI's objection is unfounded.

First, as demonstrated above, Mr. Allen was qualified to testify and his opinions regarding TCI's negligence were based on a proper foundation. This leaves TCI's claim that Mr. Allen could not testify to gross negligence because it is an improper legal conclusion. However, Texas law is clear that an "expert may state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and based on proper legal concepts" *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 365 (Tex. 1987) (finding that an expert can state an opinion on negligence and gross negligence as long as the opinion is based on proper legal concepts).[7]

Here, Mr. Ramirez's counsel read the correct definition for gross negligence and Mr. Allen applied it to his review of the facts based on his forty-five years of experience in the trucking industry as a safety expert. (4 RR 189-90). On cross-examination, TCI's counsel asked Mr. Allen to recite

---

[7] TCI's reliance on *Coastal Transportation Co. v. Crown Central Petroleum Corporation*,136 S.W.3d 227 (Tex. 2004) is misplaced. In *Coastal Transportation*, the expert testimony was a bare legal conclusion lacking any evidentiary support. *Id*. at 233-34. By contrast, Mr. Allen's testimony was based on his vast experience, familiarity with industry standards, and his examination of the scene.

the definition for gross negligence that has just been provided him. (4 RR 190:24-25) ("And, Mr. Allen, what is your definition of gross negligence?"). Aside from being in improper question, TCI requested the very thing it was objecting to—a legal conclusion.

Ultimately, the opinion was proper. It was based on a proper legal definition of gross negligence and based on Mr. Allen's experience, knowledge, and review of the evidence in this case. Allen also testified that TCI's training program warned against left hand turns, failed to teach this to their drivers, and instructed Canales to take a route that included a dangerous, blind left-hand turn. (4 RR at 160:10-18). Allen's opinions are supported by his training, knowledge, experience, and his review of the facts of this case as explained to the jury. The testimony was properly admitted.

### D. Steve Christofferson's testimony on negligent supervision is reliable.

TCI also objects, for the first time on appeal, to Mr. Ramirez's accident reconstructionist, Steve Christofferson. TCI claims that Christofferson's testimony that an alternative, superior route (Mid-Cities) was available and should have been taken by Canales is conclusory because he did not

reference any "federal or state or industry authority." *See* Appt. Br. at 40. True to form, TCI only tells this Court half the story.

At trial, Mr. Christofferson was asked whether alternative routes were available for Mr. Canales to take. (5 RR 150:24). TCI did not object to this question or Mr. Christofferson's answer. (5 RR 150:21-152:16). Mr. Christofferson opined, after being shown an ariel photograph taken during his investigation, that Mid-Cities is the superior route to exit the Amazon facility. (5 RR at 150:21-151:5). Mr. Christofferson then testified that, based on his review of the documents, Mr. Canales chose not to take this route because he thought his tractor-trailer would not fit due to other trucks being parked along both sides of the road. (5 RR at 152:20-153:3). Based on his experience and specifically the work done to prepare his report in this case, Mr. Christofferson explained that an 18-wheeler is eight and a half feet wide. (5 RR at 153:4-12). The jury was also informed that Mid-Cities was divided by a median and that the street itself is forty feet wide. (5 RR at 153:13-20).

Based on simple math, Christofferson explained to the jury that even if trucks were parked on both sides of the street, there would still be sufficient space for Mr. Canales to clear his tractor-trailer to take the Mid-Cities route. (5 RR 153:25-154:6) ("was Mid Cities Parkway too narrow for

[Canales] to navigate his 18-wheeler? A: It was not."). Christofferson's testimony is based on his actual examination of the area surrounding the Amazon facility, his measurements taken onsite, and his unchallenged expert qualifications in accident reconstruction. There is nothing conclusory about his testimony.

## E. Admission of these experts' testimony was not harmful error.

"[A]dmission or exclusion [of evidence] is likely harmless if the evidence was cumulative, or if the rest of the evidence was so one-sided that the error likely made no difference." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008). The Texas Supreme Court has recognized "the impossibility of prescribing a specific test" (*McCraw v. Maris*, 828 S.W.2d 757 (Tex. 1992)) and it is "more a matter of judgment than precise measurement." *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

As identified above, there is ample evidence that TCI failed to use its safety training program and failed to properly supervise Canales by instructing him in on basic state and federal industry standards from the remaining portions of Allen and Christofferson's testimony. Allen testified repeatedly that TCI failed to utilize their safety program to properly instruct

31

Canales. Mr. Christofferson echoed this testimony by opining that Canales failed to leave sufficient room to clear the intersection while making the dangerous and blind left-hand turn. Even assuming Mr. Christofferson's testimony on route selection was improper, it was cumulative of Mr. Allen's evidence and therefore could not constitute harmful error. *See Castro v. Schlumberger Tech. Corp.*, 673 S.W.3d 294, 306 (Tex. App.—San Antonio 2023, no pet.) (finding no error harmless when expert testimony was cumulative of a third expert's testimony that was not objected to).[8]

### F. The exclusion of evidence that Mr. Ramirez lacked a driver's license was not error.

#### 1. The lack of a driver's license was not relevant to TCI's contributory negligence defense.

TCI claims the trial court abused its discretion when it excluded evidence that Mr. Ramirez did not have a current Texas driver's license. *See* Appt. Br. at 48-50. TCI claims that the evidence was relevant to show that Mr. Ramirez was at fault for the collision. *See id.* at 45. As support, TCI relies

---

[8] Regarding Mr. Allen's testimony on gross negligence, the admission of such evidence was proper because of the then-pending claim for gross negligence. It did not somehow become harmful error simply because that claim was not ultimately submitted to the jury. In fact, that fact prevents the admission of such evidence from being harmful error as a matter of law.

heavily on *Mundy v. Pirie-Slaughter Motor Co.,* 206 S.W.2d 587 (Tex. 1947). But, *Mundy* is a negligent entrustment case and, in that context, stands for the rather unremarkable proposition that a person can be negligent for entrusting a vehicle to an unlicensed driver. *Id.* at 589-90 (if statute requires driver to be legally licensed to operate a vehicle, allowing driver to operate it without a license would constitute negligence per se).

As to Mr. Ramirez, this is not a negligent entrustment case. Mr. Ramirez was driving his own vehicle, and no one ever alleged that someone else was negligent in entrusting the car to him. Rather, TCI seeks to simply prove that Mr. Ramirez was negligent because he did not have a license. But that is not the law.

The lack of a license does not, as a matter of law, make a driver liable or constitute a proximate cause of the collision. *Medina v. Salinas,* 736 S.W.2d 224, 225 (Tex. App. — Corpus Christi-Edinburg 1987, writ denied). The lack of a required legal license does not establish incompetence or recklessness. *4Front Engineered Solutions, Inc. v. Rosales,* 505 S.W.3d 905, 911 (Tex. 2016). "Some incompetent drivers are licensed, and some competent drivers are unlicensed." *Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 574 (Tex. 1985) (noting that "[t]here are a number of reasons a driver may not have a valid

license" including that the otherwise competent driver simply "failed to apply for a license, or carelessly allowed the license to expire, or ha[d] it revoked for failure to report an accident.").

Here, TCI's own offer of proof confirms that Mr. Ramirez was licensed to drive in El Salvador but simply has not been able to take the driving portion of his exam in Texas. (4 CR 4428-29). Mr. Ramirez had already taken the online, written portion of the exam and had been trying to schedule the in-person, driving exam, but was unable to because of Covid. (4 CR 4429-30).

In light of this context, the trial court was correct to exclude this evidence. TCI had no other evidence to show that Mr. Ramirez was not a competent driver. Absent such evidence, the lack of a driver's license, by itself, was not admissible.

## 2. The exclusion of such evidence was not harmful.

But assuming such evidence was admissible, TCI fails to demonstrate how it was harmed by its exclusion. After all, the jury found Mr. Ramirez to be negligent and assigned 20% of the responsibility to him. TCI fails to show how the outcome would be any different had this evidence been admitted.

**III.    There was no incurable jury argument.**

TCI next argues that during closing argument, Mr. Ramirez's counsel suggested that the jury could calculate noneconomic damages based on a "unit of time" or "per diem" basis and that this argument was "incurable." *See* Appt. Br. at 50-56.  TCI's argument is not supported by the law.

**A.    Standard of Review.**

A complaint regarding improper jury argument must ordinarily be preserved by a timely objection which is overruled.  *Living Centers of Tex., Inc. v. Penalver,* 256 S.W.3d 678, 681 (Tex. 2008).  In rare cases, however, an argument can be considered incurable and a party can complain about it even though it did not object to the argument when it was made in the trial court.  *Id.*

To prevail on a claim that an improper jury argument was incurable, the complaining party must show that the argument by its nature, degree, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects.  *Id.*  "[J]ury argument that strikes at the appearance of and the actual impartiality, equality, and fairness of justice rendered by courts is incurably harmful not only because of its harm to the litigants involved, but also because of its capacity to

35

damage the judicial system." *Id.* Appeals to racial prejudice, for example, can be incurable because they improperly induce consideration of a party's race to be used as a factor in the jury's decision. *Id.* "Unsupported, extreme, and personal attacks on opposing parties and witnesses can similarly compromise the basic premise that a trial provides impartial, equal justice." *Id.* Accusations of witness tampering, with evidence to support it, can also be considered incurable, harmful argument. *Id.* The per diem argument in this case was not improper and certainly did not amount to incurable argument.

**B. Jury argument suggesting a per diem or unit of time measurement for noneconomic damages is proper.**

TCI fails to show how the per diem argument was improper, much less that it rose to such a level that it can be considered "incurable." TCI's only basis for criticizing the per diem argument is the recent plurality opinion in *Gregory v. Chohan*, 670 S.W.3d 546 (Tex. 2023). *See* Appt. Br. at 51-53. But, *Gregory* does not support TCI's claim for a couple of reasons.

First, *Gregory* is not binding precedent. Plurality opinions do not represent the view of a majority of the court at the time and are therefore not binding precedent. *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 872

n. 1 (Tex. 2021); *see also Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 176–77 (Tex. 1994) (when "the principles of law have not been agreed upon by a majority of the sitting court, the plurality opinion is not authority for determination of other cases, either in this Court or lower courts."); *Tex. Dep't of Mental Health & Mental Retardation v. Petty*, 848 S.W.2d 680, 689 (Tex. 1992) (Cornyn, J., dissenting)("And because today's opinion is only that of a plurality, none of these issues are settled. No court, no advocate, and no litigant can justly claim the plurality opinion as precedent for any other case."). The *Gregory* decision, therefore, does not bind lower courts, and the holding in *Gregory* — to the extent that there even is one — represents only the opinion of a small minority of the members of the Texas Supreme Court.

Even then, *Gregory* does not prohibit per diem arguments.[9] Texas state and federal courts have long allowed for mathematical calculations and per diem arguments when awarding damages and *Gregory* did not change that practice.[10] *See, e.g., Hernandez v. Baucum,* 344 S.W.2d 498, 500 (Tex. Civ.

---

[9] *Gregory* also never says that a per diem argument constitutes incurable jury argument of the sort identified in other cases by the Texas Supreme Court.

[10] TCI's cite to federal cases is misplaced because in a federal diversity case, the propriety of a jury argument is a matter of federal procedure, not state law. *See* Appt. Br. at 53-54. Thus, as the Fifth Circuit acknowledged in *Westbrook*, "whether Texas permits carte

App.—San Antonio 1961, writ ref'd n.r.e.); *see also Foradori v. Harris,* 523 F.3d 477, 511-12 (5th Cir. 2008); *Grant v. CRST Expedited, Inc.,* No. 1:18-CV-433, 2021 WL 2098967, at *2 (E.D. Tex. March 10, 2021); *Sunset Brick & Tile, Inc. v. Miles,* 430 S.W.2d 388, 390 (Tex. Civ. App.—Corpus Christi 1968, writ ref'd n.r.e.); *Chemical Exp. v. Cole,* 342 S.W.2d 773, 777 (Tex. Civ. App.—Dallas 1961, writ ref'd n.r.e.); *Louisiana & A. Ry. Co. v. Mullins,* 326 S.W.2d 263, 268 (Tex. Civ. App.—Texarkana 1959, writ ref'd n.r.e.); *Continental Bus Sys., Inc. v. Toombs,* 325 S.W.2d 153, 164-165 (Tex. Civ. App.—Fort Worth 1959, writ ref'd n.r.e.); *J. D. Wright & Son Truck Line v. Chandler,* 231 S.W.2d 786 (Tex. Civ. App.—Galveston 1950, writ ref'd n.r.e.).

Indeed, the recent plurality opinion in *Gregory v. Chohan* actually supports using such arguments by emphasizing the importance of showing how a noneconomic damage "verdict is within the bounds of reasonable inference from the evidence." 670 S.W.3d at 562 n. 13. *Gregory*, if it does

blanche use of a unit of time argument is not controlling." *Westbrook v. Gen. Tire & Rubber Co.,* 754 F.2d 1233, 1240 (5th Cir. 1985). Even then, however, *Westbrook* does not declare such arguments reversible per se but notes that the unit of time argument is permissible when couched with proper safeguards, like a cautionary instruction. *Id.* & at n. 5; *see also Foradori,* 523 F.3d at 511-12; *Grant,* 2021 WL 2098967, at *2. Of course, TCI never asked that any cautionary instruction be given to the jury in this case. Even then, federal law makes it clear that a jury verdict will only be overturned if "there is a clear showing of excessiveness or that the verdict was influenced by passion or prejudice. *Foradori,* 523 F.3d at 511. TCI fails to make that showing here, too.

anything, simply prohibits counsel from using "unsubstantiated anchors" like "the cost of a fighter jet, the auction price of a coveted painting, or any other expensive comparator" because those anchors "have nothing to do with the emotional injuries suffered by the plaintiffs and cannot rationally connect the extent of the injuries to the amount awarded." *Id*. at 558. A per diem argument that ties a value of noneconomic damages to the time in which the plaintiff is believed to suffer those injuries bears a rational relationship to the damage calculation. TCI's claim that *Gregory* prohibits such an argument is simply not accurate.

## IV. "Cumulative error" does not warrant a new trial.

At the end of their brief, TCI pleads with this Court to grant them a new trial because of "the cumulative effect of the errors discussed above." *See* Appt. Br. at 56-57. The cumulative error doctrine provides that the combined effect of multiple errors can, in the aggregate, constitute reversible error, even though each individual error, analyzed separately, was harmless. *See Pitman v. Lightfoot,* 937 S.W.2d 496, 537 (Tex. App.—San Antonio 1996, writ denied). But, this presumes that there were errors. As demonstrated above, there were no errors during the trial of this case.

39

Moreover, if there were errors, TCI was required to show that, based on the record as a whole, but for the alleged errors, the jury would have rendered a verdict favorable to them. *Id.; Arreola v. Union Pac. R.R.*, 657 S.W.3d 789, 825 (Tex. App.—El Paso 2022, no pet.). TCI has not made such a showing, and cannot make such a showing, particularly when one considers that TCI has not challenged the jury's finding that Canales was negligent and a proximate cause of the collision, that TCI is vicariously liable for his conduct, or the damages awarded to Mr. Ramirez.

## CONCLUSION & PRAYER

In the end, the trial court did nothing wrong, and the jury properly assessed the evidence presented to it and rendered a just and accurate verdict. No one questions the jury's findings of negligence and proximate cause as to Mr. Ramirez or Mr. Canales, and no one questions the value of Mr. Ramirez's damages assigned by the jury. Rather, only TCI—who admitted to being responsible for Mr. Canales's negligence—complains about its own negligence.

But, that negligence was supported by the evidence and it was appropriate to submit that negligence—which was not derivative of its employee's negligence—to the jury. TCI knew that left-hand turns were

40

significantly more dangerous *and* took it upon itself to determine the appropriate route for its drivers to take. When TCI affirmatively chose the more dangerous route—a route more dangerous by a factor of ten—it was negligent and a proximate cause of the collision. The jury's finding and assessment of responsibility was therefore correct. The final judgment should therefore be affirmed.

For these reasons, Appellee Brian Ramirez respectfully requests that this Court affirm the Final Judgment in all respects and that he be granted such other relief to which he may be justly and equitably entitled.

Respectfully submitted,

By: */s/Thad D. Spalding*
Thad Spalding
State Bar No. 00791708
tspalding@dpslawgroup.com
Lauren S. Harbour
State Bar No. 24070649
sharbour@dpslawgroup.com
DURHAM PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 – Office
(214) 946-8433 – Facsimile

and

Fidel Rodriguez, Jr.
State Bar No. 17145500
fidel@fidrodlaw.com
RODRIGUEZ TRIAL LAW
231 Cypress Street
San Antonio, Texas 78212
(210) 777-5555 – Office
(210) 224-0533 – Facsimile

*Attorneys for Appellee, Brian Ramirez*

42

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i)(2)(D) because it contains 9,136 words, excluding any parts exempted by Rule 9.4(i)(1).

/s/Thad D. Spalding
**Thad D. Spalding**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this Appellees Brief has been forwarded to all counsel of record pursuant to the Texas Rules of Appellate Procedure on October 25, 2024.

| | |
|---|---|
| David R. Rangel | Jessica Z. Barger |
| drangel@dtrglaw.com | barger@wrightclosebarger.com |
| NICONDRA CHARGOIS-ALLEN | Heidi J. Gumienny |
| nchargois@dtrglaw.com | gumienny@wrightclosebarger.com |
| DAVIDSON TROILO REAM & GARZA | WRIGHT CLOSE & BARGER, LLP |
| 601 N. Loop 410, Suite 100 | One Riverway, Suite 2200 |
| San Antonio, Texas 78216 | Houston, Texas 77056 |

*Counsel for Appellants*

/s/Thad D. Spalding
**Thad D. Spalding**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelly Blackburn on behalf of Thad Spalding
Bar No. 00791708
efile@dpslawgroup.com
Envelope ID: 93604076
Filing Code Description: Brief Requesting Oral Argument
Filing Description: APPELLEE'S BRIEF
Status as of 10/28/2024 8:17 AM MST

Associated Case Party: Transportation Concepts, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Heidi Gumienny | 24036696 | gumienny@wrightclosebarger.com | 10/25/2024 4:10:54 PM | SENT |
| Jessica Barger | | barger@wrightclosebarger.com | 10/25/2024 4:10:54 PM | SENT |
| Michael Adams-Hurta | | hurta@wrightclosebarger.com | 10/25/2024 4:10:54 PM | SENT |

Associated Case Party: BrianRamirez

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Thad Spalding | 791708 | tspalding@dpslawgroup.com | 10/25/2024 4:10:54 PM | SENT |
| Fidel Rodriguez | 17145500 | fidel@fidrodlaw.com | 10/25/2024 4:10:54 PM | SENT |
| Lauren Harbour | 24070649 | lharbour@dpslawgroup.com | 10/25/2024 4:10:54 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Rangel | 24041749 | drangel@dtrglaw.com | 10/25/2024 4:10:54 PM | SENT |
| Mame Diouf | | diouf@wrightclosebarger.com | 10/25/2024 4:10:54 PM | SENT |
| Tracy Stubblefield | | stubblefield@wrightclosebarger.com | 10/25/2024 4:10:54 PM | SENT |
| Rozalynn Ramirez | | rramirez@fidrodlaw.com | 10/25/2024 4:10:54 PM | SENT |
| Fidel Rodriguez, Jr. | | fidel@fidrodlaw.com | 10/25/2024 4:10:54 PM | SENT |
| Kelly Blackburn | | efile@dpslawgroup.com | 10/25/2024 4:10:54 PM | SENT |